William H. **BOVERS** and John J. **McGrail, Plaintiffs–Appellants,**

v.

The **FLYING TIGER LINE INC.,** and Air Line Pilots Association, International, Defendants–Appellees.

No. 1339, Docket 91–9279.

United States Court of Appeals, Second Circuit.

Argued April 20, 1992.

Decided Nov. 6, 1992.

William H. Bovers, New York City, for plaintiffs-appellants.

Robert A. Siegel and Jeffrey I. Kohn, New York City, for The Flying Tiger Line Inc., defendant-appellee.

Peter Herman and Earl R. Pfeffer, New York City, for Air Line Pilots Ass'n, Intern., defendant-appellee.

Before: OAKES, Chief Judge,* WALKER, Circuit Judge, and LEVAL, District Judge.**

LEVAL, District Judge.

This is an employment discrimination suit brought by two pilots, William H. Bovers and John J. McGrail, against their employer, Flying Tiger Line, Inc. ("Flying Tiger"), and their union, Air Line Pilots Association, International ("ALPA"). Plaintiffs alleged that they were victims of age discrimination, breach of collective bargaining agreement by their employer, and breach of duty of representation by their union. Judge Korman in the district court granted summary judgment for defendants. Plaintiffs appeal. We affirm Judge Korman's thorough and well-reasoned opinion.

## Background

In 1980, Flying Tiger merged with plaintiffs' former employer, Seaboard World Airlines, Inc. ("Seaboard"), another commercial cargo airline. Both carriers used Boeing 747 and DC–8 aircraft employing three-member cockpit crews consisting of a captain, a co-pilot (first officer), and a flight engineer (second officer). The captain is the pilot and controls the aircraft; the first officer/co-pilot assists the captain in flying the plane; the second officer/flight engineer is responsible for monitoring an instrument panel. Plaintiffs Bovers and McGrail had been Seaboard captains.

At pre-merger Seaboard, the cockpit crews were divided into two separate bargaining units, with separate seniority lists: captains and co-pilots (collectively "pilots") were represented by ALPA; flight engineers were represented by the Teamsters.

* After argument but before decision, Chief Judge Oakes became a Senior Circuit Judge.

** Hon. Pierre N. Leval, District Judge, United States District Court for the Southern District of New York, sitting by designation.

Seaboard pilots had no rights to bid into flight engineers positions, and vice versa. At pre-merger Flying Tiger, by contrast, ALPA represented both pilots and flight engineers and had an integrated seniority list for all three cockpit positions. Flying Tiger pilots had certain rights to bid and hold flight engineer positions, and Flying Tiger flight engineers could, if qualified, fill pilot vacancies.

ALPA represented all three pre-merger groups in the collective bargaining negotiations with Flying Tiger. The merger necessitated integration of the three pre-merger seniority lists. When the pre-merger groups were unable to agree on an integrated seniority list, they selected an impartial arbitrator, Lawrence E. Seebel, to devise an integrated seniority list, which together with any conditions and restrictions the arbitrator imposed, would be final and binding on the members of the three post-merger groups. The three pre-merger groups agreed that ALPA would use the integrated list in subsequent collective bargaining with Flying Tiger.

In a decision issued March 16, 1981 ("*Seibel I*"), the arbitrator issued an integrated seniority list. In making the seniority rankings for the purpose of bidding the flight engineer seat—the issue in the instant litigation—the arbitrator gave Flying Tiger pilots rights superior to those of Seaboard pilots. Seibel granted Seaboard pilots the right to bid for the flight engineer seat (a right they did not enjoy pre-merger), but made their position for such bidding subordinate in priority to the Flying Tiger pilots hired before the date of constructive notice of the merger ("third priority" vs. "second priority" bids). Flying Tiger pilot seniority rights for the flight engineer's seat were, in turn, subordinate

to Flying Tiger flight engineers and certain Seaboard flight engineers ("second priority" vs. "first priority" bids).[1] *Seibel I*, however, contained a proviso that gave Seaboard pilots preference over pre-merger Flying Tiger pilots, if an "involuntary furlough other than for medical reasons," would result in their removal from the airline's active work force (the "Seibel proviso"). The Seibel proviso arose out of a concession by pre-merger Flying Tiger pilots who offered to yield to Seaboard pilots on bids for flight engineer seats, if the Seaboard pilots would otherwise be laid off as a result of a lack of work.

*Seibel I* justified the different treatment of pre-merger Seaboard and Flying Tiger pilots by a number of reasons arising from the very different pre-merger conditions at Flying Tiger and Seaboard. These included: (1) Flying Tiger pilots had held bidding rights to the flight engineer position, while Seaboard pilots had not; (2) Seaboard's pre-merger viability was questionable; (3) gross earnings of Flying Tiger cockpit crew members had been higher and more stable; (4) Seaboard had been cutting back, while Flying Tiger was increasing employment in the cockpit; (5) Seaboard's operating fleet had become inadequate and depleted due to Seaboard's financial deterioration; and (6) Flying Tiger was expanding its operations, while Seaboard was not. All of these factors were found to justify giving pre-merger Flying Tiger pilots priority over pre-merger Seaboard pilots in bidding for flight engineer positions.

The Federal Aviation Administration ("FAA") does not permit pilots to operate commercial aircraft after age sixty. *See* 14 C.F.R. § 121.383(c). This rule does not apply to flight engineers. At the time of *Seebel I*, Flying Tiger required captains

---

1. The assertion in the text is somewhat oversimplified. The first priority bidding group included "Flying Tiger Named Flight Engineers" (a group of "career" flight engineers, not qualified to fly as pilots, who had priority to hold onto the third seat over a pilot who might choose to bid down); "Grandfathered Seaboard Engineers" (the 23 most senior flight engineers at Seaboard at the time of the merger); and "Protected Seaboard Engineers" (20 engineers given the same protected status as Flying Tiger Named Flight Engineers). Second priority included "Pre-merger Flying Tiger Pilots" (captains and first officers) and Seaboard flight engineers hired before Feb. 7, 1979. Third priority bidding went to Seaboard captains and first officers, i.e., pilots. Fourth bidding went to Flying Tiger pilots and Seaboard pilots and flight engineers hired after Feb. 7, 1979 with notice of the merger. Fifth priority went to any pilots hired by Flying Tiger after July 12, 1980.

and first officers to retire upon reaching age sixty. Bovers and McGrail were then 57. Because of Flying Tiger's mandatory age-sixty retirement for pilots, the arbitrator in *Seibel I* did not reach the moot question of the relative rights of Flying Tiger and Seaboard pilots to bid the flight engineer seat. Neither had such a right upon reaching sixty. On July 6, 1981, ALPA and Flying Tiger entered into an agreement providing that if Flying Tiger were to change its mandatory retirement policy, Flying Tiger and ALPA would negotiate the relative seniority rights of the over-sixty pilots of the two pre-merger carriers to bid for the flight engineer seat. This agreement and the *Seibel I* integrated seniority list were integrated into the collective bargaining agreement entered into on May 26, 1982.

In 1983, in response to litigation in the airline industry, Flying Tiger changed its mandatory retirement policy. Flying Tiger decided to permit employees who were disqualified by FAA regulations from serving as pilots after age sixty to continue as active cockpit crew members in the flight engineer position. Before Flying Tiger negotiated post-age-sixty bidding rights with ALPA, Bovers and McGrail turned sixty, in April and June 1983, respectively, and expressed a desire to continue working. Flying Tiger initially awarded Bovers and McGrail the most favorable seniority that ALPA could propose in future negotiations, and hence gave Bovers and McGrail the same relative priority to the flight engineer positions as was enjoyed by pre-merger Flying Tiger pilots under *Seebel I, i.e.,* second priority bids.[2] Consequently, Bovers and McGrail had a more favorable priority to bid for the flight engineer positions after

age sixty than they had enjoyed before turning sixty.

Flying Tiger's action generated opposition among pre-merger Flying Tiger pilots. ALPA and the three pre-merger groups agreed to submit the question of post-age-sixty seniority integration to arbitrator Seibel for final and binding arbitration. ALPA and the three pre-merger groups also agreed to take all necessary steps to implement the resulting arbitral award. Flying Tiger was not a party to the arbitration.

Seibel issued a decision on September 10, 1984, ("*Seibel II*"), ruling that a pilot's relative priority to bid for a flight engineer position would not change after age sixty. Consequently, pre-merger Seaboard pilots would continue to be subordinate to pre-merger Flying Tiger pilots in bidding for the flight engineer seat after age sixty. Seibel's decision was based, in part, on the fact that cross-bidding between pilot and flight engineer seats existed only at pre-merger Flying Tiger, as well as on the brighter pre-merger prospects of Flying Tiger pilots.

Seibel also determined that disqualification by FAA regulation from piloting at age sixty did not constitute an "involuntary furlough, other than for medical reasons," within the meaning of the Seibel proviso. Seibel stated that the term "furlough" in *Seibel I* meant removal from the work force "by reason of lack of work." He reasoned that mandatory retirement at age sixty "would not be due to lack of work, but rather due to the operational limitation imposed upon the Company ... by the FAA."

2.  Flying Tiger assumed that it had two options. First, it could assign plaintiffs to the same seniority grouping as pre-merger Flying Tiger pilots, immediately behind the flight engineers who enjoyed first bidding rights. This placement would have the effect of raising plaintiffs' ranking for flight engineer at age sixty. Alternatively, it could assign plaintiffs a number behind the pre-merger Flying Tiger pilots, who enjoyed second bidding rights, *i.e.,* precisely where they were before age sixty. The primary argument in support of the first option was that before the merger neither line permitted pilots

over sixty to bid for flight engineer seats—this being true at Flying Tiger because pilots were required to retire at sixty, and at Seaboard because no pilots had bidding rights for flight engineer seats. The arguments favoring the second option were that pre-merger Flying Tiger pilots, unlike Seaboard pilots, had enjoyed pre-sixty rights to bid for flight engineer seats, plus the many arguments summarized in the text relating to the greater economic strength of Flying Tiger and the brighter prospects of its pilots.

On December 24, 1984, ALPA and Flying Tiger entered into a "Letter of Agreement" ("LOA") in which they agreed to adopt the *Seibel II*'s ruling with regard to the seniority numbers of the post-age-sixty Seaboard pilots. The LOA provided, in part, that implementation of *Seibel II* would require

> the removal of certain pilots from active employment, not because of a reduction in force but, because their relative bidding rights in relationship to other pilots on the seniority list do not permit them to occupy their present positions as Second Officer [flight engineer]. By application of these rules the following named pilots will be removed from active employment as pilots: William Bovers ... John McGrail[.]

On January 7, 1985, Flying Tiger advised plaintiffs that it had put them on "involuntary leave without pay" (until a flight engineer position became available) and removed them from active duty.

On April 19, 1985, Bovers filed a grievance with Flying Tiger. A hearing was scheduled for April 29, 1985, but was postponed because Bovers could not attend.

Bovers declined to reschedule a hearing. As he acknowledged at his deposition, he "lost interest" in pursuing an administrative hearing. Rather he brought this suit in June 1985 alleging (1) defendants had violated the Age Discrimination in Employment Act ("ADEA"), (2) ALPA had breached its duty of fair representation, (3) defendants had breached the 1982 collective bargaining agreement, and (4) defendants were estopped from implementing *Seibel II* by Flying Tiger's assignment of flight officer positions to plaintiffs in 1983. After completing discovery, the parties cross-moved for summary judgment.

### The District Court Action

Plaintiffs argued that the LOA, which adopted the *Seibel II* holding regarding seniority rights of post-age-sixty Seaboard pilots to bid for flight engineer positions, facially discriminated against plaintiffs on the basis of their age in violation of ADEA, 29 U.S.C. §§ 623(a)(1)–(2), (c)(1)–(3). Defendants argued that summary judgment should be granted in their favor because the assignment of seniority numbers to plaintiffs was based on "reasonable factors other than age," 29 U.S.C. § 623(f)(1), and was a bona fide seniority system that is "not a subterfuge to evade the purposes" of ADEA. 29 U.S.C. § 623(f)(2).

Judge Korman agreed with defendants, stating that:

> The dispute over post-age sixty seniority rights arose because, at the time of Seibel I, pilots employed by pre-merger Seaboard and Flying Tiger were not permitted to bid down to the flight engineer seat at age sixty. A question existed as to whether the seniority rights of Seaboard pilots should be integrated with those of pre-merger Flying Tiger pilots on a strict date of hire method after age sixty because, prior to the merger, neither airline's[ ] pilots could bid for the flight engineer seat at that age. Arbitrator Seibel determined that the greater pre-merger expectations of Flying Tiger pilots to bid down to the flight engineer seat justified continued differential treatment based on pre-merger airline of origin after employees reached age sixty. Pilots were not classified on the basis of age in the integration of seniority rights, but rather, seniority rights were determined based on the pilots' pre-merger airline of origin. In essence, pre-merger Seaboard pilots who reached the age of sixty were in the same disadvantaged position they were in before they reached the age of sixty. This does not constitute age discrimination.

Judge Korman also stated that his conclusion was not affected by the proviso which gave Seaboard pilots a second bid priority in the event of an involuntary furlough, other than for medical reasons, since he concluded that the proviso was not applicable to plaintiffs' situation.

Judge Korman rejected plaintiffs' contention that, after Flying Tiger agreed to permit post-age-sixty pilots to bid down to the flight engineer seat, the *Seibel I* proviso, preferring Seaboard pilots in cases of "involuntary furlough," should have been construed or altered to afford preferential

benefits to pre-merger Seaboard pilots who would otherwise be terminated because of the FAA mandatory retirement rule for pilots:

> Such a blanket preference would have afforded pre-merger Seaboard pilots, who reached age sixty, benefits they were denied before reaching that age and would have undermined the basis underlying the arbitrator's decision in Seibel II, i.e., that pre-merger Seaboard pilots did not deserve such a preference because of the greater pre-merger expectations of Flying Tiger pilots. The same reasons that compel the rejection of plaintiffs' principal challenge to Seibel II also compel the rejection of this attack on the proviso as construed by the Arbitrator.

The district judge went on to find that plaintiffs had offered no evidence that defendants' age-neutral bases for integration of seniority rights and application of the proviso were a pretext for discrimination. Accordingly, he granted summary judgment for defendants on the ADEA claim.

Because plaintiffs' claims of breach of duty of fair representation by ALPA was predicated on ALPA's assent to the purportedly illegal discriminatory LOA, Judge Korman found that the claim based on duty of fair representation failed.

Finally, Judge Korman dismissed plaintiffs' claims of breach of the collective bargaining agreement and estoppel on the ground that plaintiffs had failed to exhaust their administrative remedies under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.

## Discussion

### I. ADEA

On appeal plaintiffs essentially repeat the arguments pursued below. In our view, Judge Korman correctly rejected those arguments.

■ Plaintiffs contend that defendants violated ADEA by "classifying and adversely affecting the Plaintiffs' bidding and furlough rights on the basis of age in the [LOA]." Plaintiffs contend this is so be-

cause (1) the LOA specifically reduced the bidding rights to the engineer position for Seaboard pilots over age-sixty; (2) the LOA denied "furlough" status and attendant rights and benefits to the affected post-age sixty pilots. Plaintiffs contend that by reducing their bidding rights and placing them on "Involuntary Leave Without Pay," Flying Tiger effectively discharged them.

The ADEA "broadly prohibits arbitrary discrimination in the work-place based on age," Lorillard, Div. of Loews Theaters, Inc. v. Pons, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978), providing that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[ ]." 29 U.S.C. § 623(a)(1). This protection extends to employees who are at least forty years old. See 29 U.S.C. § 631(a).

The standards of proof established to adjudicate cases arising under Title VII apply to cases arising under ADEA. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); Kirschner v. Office of Comptroller of City of New York, 973 F.2d 88, 91 (2d Cir.1992). A plaintiff bears the initial burden of proving a prima facie case of improper discrimination. See Kirschner, 973 F.2d at 92 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)). The burden then shifts to the defendant who must "articulate a legitimate, non-discriminatory reason for the challenged conduct." Id. The burden then shifts back to the plaintiff who must establish, by a preponderance of the evidence, that the employer's stated reason was a pretext for improper discriminatory conduct. See id.; Holo–Krome Co. v. N.L.R.B., 954 F.2d 108, 110 (2d Cir.1992) (on rehearing).

In this case, Bovers and McGrail met their burden of establishing a prima facie case by demonstrating the differential impact of the challenged seniority system upon members of the plaintiff class. On

their motion for summary judgment, defendants were required to proffer evidence that the challenged classification was a "bona fide seniority system ... not intended to evade the purposes of [ADEA]." 29 U.S.C. § 623(f)(2)(A). Plaintiffs, in turn, bore the burden of coming forward with evidence that defendants' stated rationale was a mere pretext for an improper age-discriminatory purpose.

Plaintiffs' reliance on *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), is misplaced. In that case, the Supreme Court rejected a seniority system that accorded bumping rights to pilots under sixty, but not to pilots over sixty. In 1978, TWA began to permit captains to continue to fly after age sixty, in the flight engineer position, rather than take mandatory retirement. TWA's collective bargaining agreement permitted captains who were disqualified from serving in the captain's position for any reason other than age to automatically "bump" less senior flight engineers without resorting to company bidding procedures. Captains disqualified because of age were not accorded the same "bumping" privilege, but instead had to resort to bidding procedures. Justice Powell, writing for the Supreme Court stated:

> The ADEA "broadly prohibits arbitrary discrimination in the work place based on age." ... Section 4(a)(1) of the Act proscribes differential treatment of older workers with "respect to ... [a] privileg[e] of employment." 29 U.S.C. § 623(a). Under TWA's transfer policy, 60–year–old captains are denied a "privilege of employment" on the basis of age. Captains who become disqualified from serving in that position for reasons other than age automatically are able to displace less senior flight engineers. Captains disqualified because of age are not afforded this same "bumping" privilege. Instead, they are forced to resort to the bidding procedures set forth in the collective-bargaining agreement. If there is no vacancy prior to a bidding captain's 60th birthday, he must retire.
>
> The Act does not require TWA to grant transfer privileges to disqualified cap-

tains. Nevertheless, if TWA does grant some disqualified captains the "privilege" of "bumping" less senior flight engineers, it may not deny this opportunity to others because of their age.

*Thurston*, 469 U.S. at 120–21, 105 S.Ct. at 621 (citation omitted).

*Thurston* is not applicable to these facts. The priority basis rejected in *Thurston* was simply age. Here the motivating distinction was the airline of origin, as between Seaboard and Flying Tiger. Arbitrator Seibel identified an impressive list of factors that justified his conclusion that pilots originating at Flying Tiger had enjoyed a substantially more favorable prognosis for future employment and bumping opportunity than those originating at pre-merger Seaboard. These factors were age neutral. They included Seaboard's doubtful pre-merger viability, the deteriorated condition of Seaboard's fleet, Flying Tiger's simultaneous expansion and growth, cutbacks in Seaboard's cockpit employment while similar employment at Flying Tiger was growing, higher earnings among Flying Tiger's pilots, and the fact that Flying Tiger pilots had enjoyed bid-down rights to the flight engineer position while Seaboard pilots had not. Those reasons constituted powerful age-neutral justification for giving plaintiffs lower priority than their Flying Tiger-originating counterparts.

The LOA, which established plaintiffs' relative seniority, did not classify pilots by reference to age. To the extent that age plays a role in determining plaintiffs' employment opportunities, this is because of the FAA's lawful disqualification of pilots over sixty from working in the first or second seat, not because of any age factor motivating arbitrator Seibel or the LOA. Judge Korman correctly found that plaintiffs had made no significant showing that the age-neutral bases asserted by defendants were a pretext for discrimination.

Nor is there merit to plaintiffs' arguments addressed to the *Seibel I* proviso. Plaintiffs contend that they should have received the benefit of this proviso, which upped Seaboard pilots to the same priority as pre-merger Flying Tiger pilots in the

event of "involuntary furlough, other than for medical reasons."

Plaintiffs' position includes two arguments, one based on ADEA, the other on breach of contract.

■ There is no merit whatever to the argument based on ADEA. The employer's action removing plaintiffs from active employment was not based on their age but on the fact that their low priority effectively barred them from obtaining work as flight engineers. That low priority was based on the pre-merger positions of Seaboard and Flying Tiger, not on plaintiffs' ages. The fact that plaintiffs could not fly as pilots was age related, but it resulted from the lawful requirement imposed by the FAA. The refusal of the defendants to construe the *Seibel I* proviso to confer benefits upon plaintiffs is not age discrimination. While ADEA protects plaintiffs from being victimized by discrimination based on their age, it does not entitle them to protection against all negative employment decisions, when these are made for reasons independent of their age. Flying Tiger's reasons for laying off plaintiffs was not that they were old but rather that it would be expensive, without benefit, to maintain them when there was no work for them. This is not age discrimination.

Judge Korman also rejected plaintiffs' second argument, that they were "furloughed" within the meaning of the *Seibel I* proviso and should therefore have received its benefit. In our view, that claim, concerning the proper application of a collective bargaining agreement to individual employees, was not properly before the court, for reasons discussed in Part III of this opinion.

## II. *Union's Duty of Fair Representation*

■ The district court also properly granted summary judgment dismissing plaintiffs' claim that ALPA breached its duty of fair representation in agreeing to the LOA, despite its disadvantage to plaintiffs.

Plaintiffs' argument on this point depends in part on the validity of their argument based on ADEA. Their union, they contend, breached its duty by accepting the agreement on terms that violated plaintiffs' rights under ADEA. Because, as explained above, the agreement did not violate ADEA, this argument has no force.

Plaintiffs further argue that ALPA's agreement as to them was discriminatory and unreasonable and left them in an unprotected situation. The contention that the LOA was unreasonable or arbitrary is completely without justification. In the first place, the LOA was based on an agreement to resolve the dispute by binding arbitration. Secondly, the arbitration decision and the resultant agreement were logically based on the comparative security and strength of the pre-merger positions of the various cockpit employees where priority rights vis-a-vis one another were at issue. Considerations of pre-merger status have been recognized as a valid basis for classification. *See Gvozdenovic v. United Airlines, Inc.*, 933 F.2d 1100, 1106–07 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991). The fact that the LOA left plaintiffs in a disadvantaged position does not mean that their interests were not fairly defended by their union. The weak position in which they ended was a consequence of the weak position from which they began.

## III. *Failure to Exhaust Administrative Remedies*

■ Judge Korman properly dismissed plaintiffs' breach of contract and estoppel claims by reason of plaintiffs' failure to pursue their administrative remedies under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Plaintiff Bovers had instituted a grievance proceeding in accordance with the Act, but failed to appear and then lost interest in pursuing the grievance. He did not respond when efforts were made to reschedule. Plaintiff McGrail never invoked the grievance procedure.

Claims that arise "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," 45 U.S.C. § 152 SIXTH, are "minor disputes" under the

RLA, at least where the employer's action is "arguably justified by the terms of the ... collective bargaining agreement." *Consolidated Rail v. Railway Labor Exec. Ass'n*, 491 U.S. 299, 307, 109 S.Ct. 2477, 2482, 105 L.Ed.2d 250 (1989). Such minor disputes are subject to the exclusive jurisdiction of the appropriate administrative forum. The employer's action was at worst "arguably justified" by the collective bargaining agreement. It was therefore minor and should have been addressed by the grievance procedure.

There is no basis for plaintiffs' contention that they were excused from pursuing their administrative remedies by reason of futility. Congress expressed a clear intention to submit such minor disputes to the administrative adjustment boards and not the courts. *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978); *Stanton v. Delta Airlines Inc.*, 669 F.2d 833, 836 (1st Cir. 1982). While it is true that a showing of exceptional conditions can justify a finding of futility and authorize bypass of the administrative process, *see Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 329–30, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969); *Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 811 (9th Cir.1991), plaintiffs have made no showing that would come close to excusing them from adhering to the statutory mandate. Nor did plaintiffs advance any evidence of bad faith. Plaintiffs' arguments are without merit.

### Conclusion

The judgment of the district court is affirmed.