973 F.2d 88
 59 Fair Empl.Prac.Cas. (BNA) 1101,
59 Empl. Prac. Dec. P 41,738
Joseph KIRSCHNER and Irwyn Greif, Plaintiffs-Appellants,
v.
The OFFICE OF THE COMPTROLLER OF THE CITY OF NEW YORK,
Benedict Santeramo, and Harrison Goldin,
Defendants-Appellees.
 No. 1415, Docket 91-9230.
 United States Court of Appeals,
Second Circuit.
 Argued April 27, 1992.
Decided Aug. 17, 1992.
 
 Christopher Lovell, New York City, for plaintiffs-appellants.
 Alan G. Krams, New York City (O. Peter Sherwood, Barry P. Schwartz, Rebecca Northey, Geoffrey Mort, New York City, on the brief), for defendants-appellees.
 Before: MESKILL, Chief Judge, NEWMAN and PIERCE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 Plaintiffs Joseph Kirschner and Irwyn Greif appeal from the October 31, 1991, judgment of the District Court for the Southern District of New York (Thomas P. Griesa, Judge) dismissing their complaint on a motion for judgment n.o.v. Following a five-day trial, the jury returned a verdict finding that the defendants--the Office of the Comptroller of the City of New York (the "Comptroller"), Benedict Santeramo, and Comptroller Harrison Goldin (collectively, the "City" or the "defendants")--had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) (1988), by favoring younger applicants in promotions into managerial positions at the Comptroller's office.
 
 
 2
 The jury found that due to age discrimination, Kirschner had been denied promotions to Administrative Claim Examiner from 1988 to the present and that Greif had been denied promotions to Associate Claim Examiner Level II and Administrative Claim Examiner from 1985 to the present. The jury rejected their claims that they had been wrongfully denied merit raises. Immediately after the jury returned its verdict, the Court sua sponte granted a new trial under Fed.R.Civ.P. 59(d) for three reasons: (1) the verdict was against the great weight of the evidence, (2) the verdict constituted an interference with the discretion of the City in promotional decisions, and (3) the verdict resulted from the "woefully inadequate" summation by defense counsel. The defendants thereafter made a motion for judgment n.o.v. The Court granted the motion and dismissed the action, ruling that a new trial should be held if its judgment was reversed on appeal. The plaintiffs urge this Court to vacate the judgment, direct entry of judgment for the plaintiffs, and remand to determine damages.
 
 
 3
 We reverse the grant of judgment n.o.v. in favor of the defendants, affirm the conditional grant of a new trial, and remand the action for further proceedings consistent with this opinion.
 
 Facts
 
 4
 A. Background. Plaintiffs are both employed in the Bureau of Law and Adjustment ("BLA") of the New York City Comptroller's Office. Every year BLA processes approximately 25,000 claims by individuals and companies against the City of New York, a self-insured entity. Newly hired employees work as provisional employees until they satisfy applicable civil service criteria, including the civil service exam, at which time they are promoted to Claim Examiner. In 1988, the civil service positions at the BLA were redesignated so that the positions at BLA above Claim Examiner are, in ascending order: Associate Claim Examiner Level I ("ACE I"), Associate Claim Examiner Level II ("ACE II"), Administrative Claim Examiner, and finally Chief.
 
 
 5
 Normally, the Comptroller hired and promoted candidates from a list of eligible persons who had passed a civil service exam compiled by the New York City Department of Personnel. During the 1980s, no examinations were given for Administrative Claim Examiner or ACE II, and there were no active civil service lists for those positions. Under these circumstances, the Comptroller could hire applicants "provisionally" for up to nine months or until the next civil service exam was given. Apparently, all promotions since the mid-1980s at BLA were made on a provisional basis. The tenure of the provisional appointees who were promoted ahead of the plaintiffs uniformly exceeded the nine-month period, and in one case had lasted six years by the time of trial. As of 1990, the exams for ACE II, Administrative Claim Examiner, and Chief had not been given for over seven years.
 
 
 6
 Though these provisional appointees did not take the civil service exam, they nevertheless were required to meet the minimum qualifications set forth in the Department of Personnel's job description for the position. After interviewing applicants, a committee would make a recommendation to the Chief of BLA, who was defendant Santeramo during most of the time period in issue. Promotion decisions were based on a number of factors including written performance evaluations.[1] If the Chief of BLA accepts the recommendation, the Second Deputy Comptroller and the First Deputy Comptroller must then approve the recommendation, although they are not normally involved in the interviewing process. Before final approval, the Assistant Comptroller for Administration checks to ensure that the person recommended meets the minimum requirements for the position.
 
 
 7
 B. The plaintiffs. At the time of trial in March 1991, Kirschner was 65 years old and worked as an ACE II. Beginning with the Comptroller's Office in 1955 as an Investigator, Kirschner was promoted in 1975 to his present title, then called Supervising Claim Examiner. Prior to 1984, Kirschner had passed the civil service exams for ACE I, ACE II, and "Administrative Entry into Management." In this action, Kirschner alleges that he was improperly denied a provisional promotion to the managerial position of Administrative Claim Examiner.
 
 
 8
 At the time of trial, Greif was 60 years old. He was hired by the Comptroller in 1962 as a provisional Claim Examiner. In 1963, Greif passed the civil service test to become a full Claim Examiner, and in 1985 he was promoted to ACE I after passing a civil service examination for that title. Greif maintains that he was improperly denied provisional promotions to both the ACE II and Administrative Claim Examiner positions.
 
 
 9
 Claim Examiners investigate claims filed against New York City and make recommendations with regard to settlement. As an ACE I, Greif was responsible for performing the same investigatory duties as Claim Examiners, but generally worked on more complex matters. ACE I's, however, exercise no supervisory responsibilities. ACE II's such as Kirschner supervise units of ACE I's and Claim Examiners and report to Administrative Claim Examiners. Administrative Claim Examiner is a managerial position that involves serving as a division chief or bureau chief.
 
 
 10
 C. The allegations. The plaintiffs argue that they were denied various promotions and merit pay increases due to age discrimination. As evidence, they rely in large part on the Comptroller's August 16, 1988, Career Path Memorandum and two conversations between Kirschner and Second Deputy Comptroller Morris Raucher (the "Raucher conversation"). Kirschner, who was friendly with Raucher, testified that during conversations in the Garden Cafeteria and in a men's room of the Municipal Building, Raucher informed him
 
 
 11
 that he was going to follow the policy that had been laid out by Mr. Santeramo [Chief of BLA], and apparently the boss over him, that would be the Comptroller himself or his First Deputy, that they would give promotions and increments to younger people because there was a terrific turnover in staff, and they just wanted to retain them and--whenever a new person came in, you had to spend months training them before they actually knew the job fully, or pretty fully.
 
 
 12
 That was what he indicated, he was going to follow the Department policy. He wasn't going to interfere with the policy, which was being followed by the Department at that time, as set down by the Bureau Chief, which was Mr. Santeramo.
 
 
 13
 Kirschner did not identify when this conversation occurred although he did testify that the age-based discrimination began "a little bit before Mr. Raucher" arrived, "sometime in late '83 or beginning of '84."
 
 
 14
 Similarly, the BLA's Career Path Memorandum outlined a proposal to reduce the excessive turnover of newly hired entry level claim examiners at the Comptroller's Office. Under this retention policy, during the first two years at the office, the claim examiner would be eligible for $1,500 bonuses per year. During the third year, the person "will be made Associate Level I." At the end of the fourth year, "the individual can expect to be eligible for consideration for Associate Level II as vacancies occur." Thus, by the end of their fourth year, the claim examiners hired under this policy would be competing with Greif for promotions to ACE II. During the sixth year and beyond, the "individual will be considered for promotion to administrative positions as vacancies occur."
 
 Discussion
 I. Applicable standards
 
 15
 The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1988). This protection extends to employees who are at least 40 years old. Id. § 631(a). ADEA claims are analyzed under the structure established for Title VII claims, see Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985), whether involving pretext claims, see Montana v. First Federal S & L of Rochester, 869 F.2d 100, 103 (2d Cir.1989), or dual motivation defenses, see Ostrowski v. Atlantic Mutual Insurance Companies, 968 F.2d 171, 180 (2d Cir.1992). We recently discussed at length the distinctions between pretext and dual motivation analysis in the context of labor disputes, see Holo-Krome Co. v. N.L.R.B., 954 F.2d 108, 110 (2d Cir.1992) (on rehearing), and age discrimination claims, see Ostrowski v. Atlantic Mutual Insurance Companies, at 180-86; Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1179-87 (2d Cir.1992).
 
 
 16
 In this case, Judge Griesa instructed the jury based on a pretext theory and denied the request for a so-called Price Waterhouse instruction on dual motivation.[2] See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Thus, the case was presented to the jury based on the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 & n. 6, 101 S.Ct. 1089, 1094 & n. 6, 67 L.Ed.2d 207 (1981). Under this approach, the plaintiff has the initial burden of proving a prima facie case of discrimination before the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged conduct. McDonnell Douglas Corp. v. Green, 411 U.S. at 802-04, 93 S.Ct. at 1824-25. Finally, the plaintiff must prove by a fair preponderance that the employer's articulated reason was pretextual. Id. We turn to the question of whether the Court properly granted judgment n.o.v. under the McDonnell Douglas pretext analysis.
 
 II. Judgment notwithstanding the verdict
 
 17
 Judgment n.o.v. is appropriate when the "evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could have reached." Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1046 (2d Cir.1992). In other words, judgment n.o.v. is to be granted only when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." Id. We review de novo the grant of judgment n.o.v. Id.
 
 
 18
 The plaintiffs rely on the so-called Raucher policy and the Career Path Memorandum as evidence that the defendants intentionally promoted younger and less qualified employees. In addition, the plaintiffs argue that the defendants manipulated the civil service system to allow them to promote younger workers without requiring them to take a civil service exam. The defendants respond that the "plaintiffs were mediocre employees lacking managerial skills and initiative, as a result of which promotions were given to better qualified employees of all ages." Brief for Appellees at 34. Plaintiffs rebut the defendants' merit defense by arguing that they were more qualified than the persons promoted ahead of them under the Career Path Memorandum. To counter their mediocre written evaluations, they contend that the evaluations were altered by the defendants and that no evidence exists to indicate that the defendants considered the evaluations.
 
 
 19
 A. Prima facie case. Under McDonnell Douglas and Burdine, the initial inquiry is whether the plaintiff has presented evidence sufficient to establish a prima facie case of discrimination. In reviewing the grant of judgment n.o.v., we conclude that a reasonable jury could have relied on the Career Path Memorandum and the Raucher conversation to support a finding of discriminatory animus.
 
 
 20
 By its explicit terms, the Career Path Memorandum does not disadvantage workers on the basis of age and simply favors new applicants. As defendants argue, the plaintiffs introduced no statistical or other evidence showing any connection between the memo and age discrimination. Before the District Court, however, the defendants opposed a subpoena requesting age information on persons promoted under the policy on the ground that the information was not relevant to the suit. The District Judge agreed and quashed the subpoena. Under these circumstances, the defendants are estopped from arguing that the Career Path Memorandum did not use "new applicant" as a proxy for "young applicant."[3] The jury was entitled to rely on the policy document as evidence of discriminatory animus.
 
 
 21
 We also conclude that the District Court erred when it dismissed Raucher's remarks as "stray remarks" in the workplace. The emerging doctrine concerning "stray remarks" has its genesis in Price Waterhouse's dual motivation approach to employment discrimination cases. See 490 U.S. at 251, 109 S.Ct. at 1797 (plurality); id. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring); id. at 280, 109 S.Ct. at 1806 (Kennedy, J., dissenting). The District Court here characterized the Raucher conversation as "stray remarks" because "Raucher himself played no role in decisions regarding plaintiffs." We disagree for two reasons. First, the jury could properly have considered the Raucher conversation even if the conversation could be considered a "stray" remark under the Price Waterhouse analysis since the case was presented to the jury solely on the basis of the McDonnell Douglas pretext analysis. Recently, we explained that while
 
 
 22
 "stray" remarks in the workplace by persons who are not involved in the pertinent decision making process ... may suffice to present a prima facie case under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 [101 S.Ct. 1089, 67 L.Ed.2d 207] (1981), and may indeed persuade the factfinder that the plaintiff has carried his or her ultimate burden of persuasion, see generally Price Waterhouse, 490 U.S. at 247 n. 12 [109 S.Ct. at 1789 n. 12] (plurality opinion), [such evidence] would not suffice, even if credited, to warrant a Price Waterhouse charge.
 
 
 23
 Ostrowski, at 182. As discussed above, the case was presented to the jury solely on the basis of a pretext analysis. Thus, even if the Raucher conversation were not sufficient to warrant a dual motivation charge, the conversation "may indeed persuade the factfinder that the plaintiff has carried his or her ultimate burden of persuasion." Id.
 
 
 24
 In any event, the Raucher conversation cannot be characterized as a "stray" remark and therefore on remand, if requested, the District Court should reconsider whether a Price Waterhouse charge is appropriate. In general, even circumstantial evidence is sufficient to warrant a dual motivation instruction if it is "tied directly to the alleged discriminatory animus." Id. at 182. Thus, comments made "in the workplace by persons who are not involved in the pertinent decisionmaking process" would not support a Price Waterhouse charge. Id. at 182. Such a charge would be required, however, if the plaintiff presented, among other things, "policy documents or statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit." Id. According to Kirschner, Raucher explained that "they would give promotions and increments to younger people because there was a terrific turnover in staff." Although Raucher did not participate directly in the interviewing process, as Second Deputy Comptroller, he ultimately approved all the employment decisions. Indeed, Kirschner testified that Raucher verified that "he was going to follow the Department policy." Because Raucher was the Second Deputy Comptroller from 1985 to February 1986, he was in a position to carry out the mandate of the Career Path Memorandum and deny Greif his promotion to ACE II in 1985. Consequently, the comments were made by one "involved in the decisionmaking process."
 
 
 25
 Relying not only on the Career Path Memorandum and the Raucher conversation but also on trial testimony, a reasonable jury could have found that the defendants manipulated the promotion system to retain young employees. Specifically, the defendants retained younger provisional employees under the Career Path Memorandum beyond the nine-month maximum for provisional employees by failing to insist that the City give a civil service exam for those positions. Newly hired examiners would not have been assured promotions under regular civil service channels because they could either fail the exam or otherwise fail to meet the requirements for promotion to a permanent position.
 
 
 26
 Though the Department of Personnel, which is not a party, was responsible for preparing and conducting exams, the absence of a civil service exam nevertheless was probative of the defendants' discriminatory intent. While the Comptroller's Office lacks the authority to conduct an exam, it could have requested one. In the mid-1980's plaintiff Kirschner unsuccessfully attempted to enlist the aid of his union and Santeramo to "force" the Department of Personnel to conduct a test. Greif similarly attempted to force such tests to be given. Though Santeramo testified that he had orally requested the Department of Personnel to give the test, the jury could have disbelieved him because whenever Santeramo had previously requested an exam, the Department of Personnel had complied.
 
 
 27
 Thus, the jury could have inferred a prima facie case that the Comptroller's Office was engaged in the discriminatory hiring and promotion policies alleged by the plaintiffs.
 
 
 28
 B. Articulated reasons and pretext. At trial, the defendants provided ample evidence that, if credited, showed that the persons promoted past Greif and Kirschner were far more capable and deserving. In so doing, they met their burden to articulate a legitimate, non-discriminatory reason for their promotion decisions. The next issue, therefore, is whether the plaintiffs met their burden of proving that these reasons were pretextual.
 
 
 29
 1. Minimum qualification. As a threshold matter, the defendants maintain that Greif did not meet one of the requirements for Administrative Claim Examiner. Because an Administrative Claim Examiner has "wide latitude for the exercise of initiative and judgment," the position required eighteen months of experience in an administrative, managerial, or executive capacity, or in supervising a staff of Claim Examiners or persons performing similar work. Greif explained that while he did not meet the express terms of the requirement, he had equivalent experience. Though civil service rules allow equivalent experience to substitute for certain requirements (such as a college degree or four years' experience as a claims adjuster), it does not provide for equivalency with respect to managerial or supervisory experience. The jury could have found, however, that in 1985, the defendants wrongfully denied Greif a promotion to ACE II, a position that would have provided adequate experience for the Administrative Claim Examiner position. Thus, but for a prior discriminatory action, Greif would have met the minimum requirements for the promotion to Administrative Claim Examiner. We therefore reach the crux of the appeal--whether the evidence permitted the jury to conclude that the plaintiffs were denied promotions based on their age, rather than on their allegedly mediocre work records.
 
 
 30
 2. Merit. The defendants argue that Greif's work history justified rejecting his numerous bids for promotions. They presented oral testimony from a number of supervisors uniformly characterizing Greif as a person unable to manage his caseload and who developed a large backlog of cases. They also testified that while Greif may have been good at holding hearings in his position at the Hearing Unit, he was poor in administrative and other related matters required for a supervisory or management position. In addition, most of Greif's written evaluations were mediocre to poor. On seven of the eight written evaluations that Greif received since 1980, he received a mediocre "satisfactory" overall rating. In 1983, when Greif was in the Investigations Division, he received an overall rating of "unsatisfactory," with comments such as "does not complete new assignments," "shows no initiative," and "has other interests."
 
 
 31
 In a similar vein, the defendants presented the testimony of Kirschner's supervisors, who portrayed him as an adjuster who did not thoroughly investigate his cases, was uninterested in his work, and who spent much of the day talking on the phone about personal business. Since 1980, Kirschner has received seven performance evaluations. While he received a superior overall rating in 1980, he thereafter received overall ratings of either satisfactory or unratable. Kirschner has received only one superior task rating since 1980.
 
 
 32
 3. Jury issue as to pretext. In spite of this evidence, we conclude that the jury's implicit rejection of the defendants' merit based defense was permissible and that the jury was entitled to find that this articulated justification was pretextual, based on the entire record. We first consider the written evaluations, a consideration relevant to both of the plaintiffs. Edward Walla, a member of the interviewing committee, testified that he did not read the reviews. In addition, the plaintiffs presented evidence indicating that the performance evaluations had been altered. In short, the jury heard evidence suggesting that the written evaluations were not accurate or even relevant to the promotion decisions, which would have allowed a reasonable jury to discount their significance. We next consider the qualifications of each of the plaintiffs.
 
 
 33
 Prior to joining the office, Greif had some seven years of experience as a claims examiner in the private sector. Greif had worked in the Division of Investigations, the Certiorari Unit (Real Property Department), and the 50-H Hearings Unit, where he is presently assigned. From 1985 to 1987, Greif taught claims examiners in the Real Property Department to make claim statements.
 
 
 34
 In addition, attorneys appearing before Greif at the Hearing Unit have complimented him for holding the best hearings and have specifically praised him for his handling of a hearing concerning an explosion at Consolidated Edison. Greif testified that even his supervisor at the Hearing Unit, Mr. Bartiromo, "felt that I took excellent hearings[.]" His co-worker Klein concurred, "Well, I think he's one of the best, if not the best, hearing examiner in the unit." Bartiromo testified that he would have considered Greif along with possibly one other person for a promotion to ACE II at the Hearing Unit although he would not have promoted Greif to chief of the Hearing Unit. Greif also testified that Bartiromo told him that he had asked Santeramo to make Greif a supervisor.
 
 
 35
 Kirschner was a graduate of St. John's Law School, and had over thirty years of experience with the Comptroller's Office. Starting in 1975, Kirschner supervised and taught Claim Examiners and Senior Claim Examiners in a number of departments within the Comptroller's Office. Kirschner also served as the representative of the Comptroller's Office, first in New York Civil Court, and then in the New York and Brooklyn Supreme Courts. In this capacity he had the absolute authority to settle claims up to $25,000, and recommendation authority to settle claims up to $150,000.
 
 
 36
 The jury was free to assess the credibility of the witnesses and to weigh the conflicting evidence on the merit defense in favor of the plaintiffs. The evidence was not such that a reasonable jury could reach only one conclusion. Accordingly, the judgment notwithstanding the verdict is reversed.
 
 III. New trial
 
 37
 Though we reverse the grant of judgment n.o.v., we affirm the conditional grant of a new trial. Initially, we note that the trial court's conditional grant of a new trial, issued pursuant to Fed.R.Civ.P. 50(c)(1), is an appealable order. That rule provides that "[i]n case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered." Thus, the rule expressly contemplates appellate review of an order for a new trial when the order is conditioned on the reversal of a judgment granted as a matter of law. See Index Fund, Inc. v. Insurance Company of North America, 580 F.2d 1158, 1163 (2d Cir.1978), cert. denied, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); see also Song v. Ives Laboratories, Inc., 957 F.2d 1041 (2d Cir.1991) (reviewing conditional grant of new trial without discussion of reviewability); Samuels v. Health and Hospitals Corp., 591 F.2d 195, 198-99 (2d Cir.1979) (conditional new trial affirmed due to substantial question whether there had been a just determination of the action).
 
 
 38
 However, we may consider on the appeal of the order conditionally granting a new trial only matters that are reviewable. For example, if the new trial had been ordered because of an error in the charge, the correctness of the charge could be reviewed. But in this case, the new trial was ordered essentially because the trial judge considered the verdict to be against the weight of the evidence. In this Circuit a "trial court order granting or denying a motion for a new trial on grounds that a verdict is against the weight of the evidence is not reviewable on appeal." Roberts v. Consolidated Rail Corp., 893 F.2d 21, 26 (2d Cir.1989) (citing Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481-83, 53 S.Ct. 252, 254-55, 77 L.Ed. 439 (1933); Portman v. American Home Products Corp., 201 F.2d 847, 848 (2d Cir.1953)). The fact that the new trial order was conditional, to be effective only if the judgment n.o.v. was reversed, does not make reviewable the District Judge's ruling that the verdict was against the weight of the evidence. Since that ruling alone supports the conditional grant of the motion for a new trial, we have nothing further to consider and therefore affirm the order granting a new trial.
 
 Conclusion
 
 39
 With respect to both plaintiffs, we reverse the grant of judgment n.o.v., affirm the grant of a new trial, and remand for further proceedings.
 
 
 
 [1]
 The possible performance ratings are: outstanding, superior, satisfactory, conditional, unsatisfactory, and unratable. In addition to an overall performance rating, ratings are given for specific tasks
 
 
 [2]
 The Judge instructed the jury that in order for the plaintiffs to prevail, they must prove by a fair preponderance that age was a "determinative factor" in the relevant employment decisions, but they need not prove that age was the "sole" factor. See Hagelthorn v. Kennecott Corp., 710 F.2d 76, 82 (2d Cir.1983). The Judge explained that to be determinative, "the other characteristics, such as competence, performance in his job, were such that but for the age factor he would have gotten the promotion or the merit increase." In other words, the plaintiffs must "show" that age "was a factor that prevented him from getting the promotion, and that in the absence of that factor he would, because of his competence and abilities, he would have gotten the promotion or the merit increase."
 
 
 [3]
 The trial testimony on the effect of the Career Path Memorandum was conflicting. Greif testified that the new Claims Examiners were young and that the beneficiaries of the Career Path Memorandum were young. Santeramo testified at one point that it was "probably true" that the entry level Claim Examiners were young, although he denied having any specific knowledge, but then subsequently testified that the policy did not favor younger employees