**James DUNLAP–McCULLER,**
**Plaintiff–Appellant,**

v.

**The RIESE ORGANIZATION; Mannu Sohi; Robert Gladstone; Gary Chielmewski, Defendants–Appellees.**

**Nos. 3, 16, Dockets 91–7676, 91–9292.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1992.

Decided Nov. 25, 1992.

James Dunlap–McCuller, pro se.

Richard L. Steer, New York City (Larry Hutcher, John Harris, Davidoff & Malito, of counsel), for defendants-appellees.

Before: MINER, ALTIMARI, and WALKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant James Dunlap–McCuller appeals a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., *Judge*), following a second jury trial on his claims of discrimination and retaliatory discharge. On appeal, Dunlap–McCuller also challenges the district court's grant of a motion made by defendant-appellee, the Riese Organization ("Riese"), for a new trial. At both trials Dunlap–McCuller was represented by counsel, however, he is now proceeding *pro se*.

At the conclusion of the first trial, the jury returned a verdict for Dunlap–McCuller, finding that he had been unlawfully discriminated against on account of his race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 et seq., and that he had also been unlawfully discriminated against because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. (1988). The jury awarded Dunlap–McCuller damages in the amount of $134,000 for these two claims. In addition, the jury found that Dunlap–McCuller had been terminated in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission and New York State's Division of Human Rights, in violation of Title VII and 42 U.S.C. § 1981, and awarded Dunlap–McCuller $75,000 in damages for this claim.

Riese moved for judgment notwithstanding the verdict, pursuant to Fed.R.Civ.P. 50(b), and in the alternative for a new trial, pursuant to Fed.R.Civ.P. 59(a). The district court denied Riese's motion for judgment n.o.v. but granted the motion for a new trial, finding that the jury's verdict was clearly against the weight of the evidence.

After a second trial, the jury returned a verdict for Dunlap–McCuller on the retaliation claim alone, and awarded him $1,500 in damages. The district court entered judgment accordingly. Pursuant to 42 U.S.C. § 1988, Dunlap–McCuller moved for the recovery of $64,937.50 in attorneys' fees. Reasoning that Dunlap–McCuller had only

recovered approximately 2% of what he had sought in damages, Judge Martin determined that the fees should be limited to $1,000, representing 2% of what the court deemed an appropriate full fee had Dunlap–McCuller succeeded on all of his claims.

On appeal, Dunlap–McCuller first contends that the district court abused its discretion in granting Riese's motion for a new trial. Appellant also maintains that the district court abused its discretion and committed reversible error during the course of the second trial by admitting into evidence the transcripts of telephonic depositions taken the previous day of witnesses not listed in the pre-trial order. Finally, Dunlap–McCuller argues that the district court committed clear error in calculating the award of attorneys' fees.

For the reasons set forth below, we affirm, in part, and vacate and remand, in part, with instructions to hold a new trial limited to the issue of damages for retaliatory discharge. In addition, the district court's award of attorneys' fees is vacated and remanded with instructions that following the new trial the district court set adequate attorneys fees in a manner consistent with this opinion.

## BACKGROUND

On June 8, 1987, Dunlap–McCuller, a black male in his fifties, filed a complaint under the ADEA and Title VII charging Riese, his former employer, with discrimination based on age and race. Dunlap–McCuller's complaint also charged Riese with discharging him in retaliation for having filed a charge of discrimination with the Equal Employment Opportunity Commission and New York State's Division of Human Rights.

A jury trial was held on January 15 and 16, 1991. At trial Dunlap–McCuller testified that he had applied for a position as a restaurant manager with Riese in June, 1984. Riese owns and operates approximately 275 restaurants in the New York metropolitan area. According to Dunlap–McCuller, despite his qualifications and the availability of a number of managerial positions, he was informed that no such posts were presently vacant. Dunlap–McCuller was instead offered a position as a cashier, which he accepted. Dunlap–McCuller was 54 years old at the time.

Dunlap–McCuller was promoted to the position of night manager in September, 1984. According to Dunlap–McCuller, this position was effectively that of an "assistant manager," and the responsibilities, pay, and opportunities for promotion associated with this position were significantly less than those associated with the position of "day manager." This observation was confirmed during the cross-examination of several Riese employees. According to Dunlap–McCuller, of the approximately forty "day managers" (or general managers) that he had personally met, not one of them was black or over fifty years of age.

Appellant testified that he lodged a complaint to his immediate supervisor, a Mr. Ralph, in the fall of 1985 concerning the treatment of blacks with regard to promotion and staffing. According to Dunlap–McCuller, the next day Mr. Ralph called him a "goddamned nigger" and fired him. Dunlap–McCuller was rehired only after he complained to Mr. Ralph's superior.

Appellant filed a complaint with the Equal Employment Opportunity Commission on May 29, 1986. This complaint was subsequently transferred to the New York State's Division of Human Rights. According to Dunlap–McCuller, employees of Riese began to harass him shortly after he filed this complaint. In particular, he testified that he was transferred to different restaurants between 15 and 20 times in the course of a month, his days off were changed without notice, and the staffing of the restaurants during his shifts as night manager were severely reduced. Dunlap–McCuller contrasted this situation with the circumstances that existed prior to filing his complaint, where, for example, he was transferred three or four times in a six month period in order to serve as a "troubleshooter" at various restaurants owned by Riese.

It is undisputed that Dunlap–McCuller was fired by Riese's Vice President of Operations, Robert Gladstone, on September 28, 1986. According to Dunlap–McCuller, he was replaced by a non-black who was significantly younger. Gladstone could not remember the reason for appellant's termination. However, Riese presented evidence relating to two incidents, which Riese claimed justifiably resulted in Dunlap–McCuller's dismissal.

The first incident allegedly occurred in the middle of May, but was not brought to Dunlap–McCuller's attention until early June—almost immediately after he had filed his complaint. According to the testimony of Riese's Vice President of Operations, Robert Gladstone, Riese discovered a $2000 discrepancy in the amount of deposits made to its bank from the restaurant where Dunlap–McCuller was the night manager. However, Gladstone admitted during cross-examination that he did not have any bank records or receipts to document the missing deposits. While Dunlap–McCuller did sign a statement which recounted his responsibility for the incident, he claims that his signature was coerced by a threat of the loss of his employment.

Riese also introduced evidence concerning a second incident that allegedly took place on July 19, 1986. On this date Dunlap–McCuller was reportedly discovered teaching a clinic to 8 or 10 adolescent girls at the Hayes Coffee Shop, where he was then working. According to the day manager of the Coffee Shop, when he arrived at 7:00 a.m. to start his shift, Dunlap–McCuller was in the midst of instructing these young women. Dunlap–McCuller vigorously denied that this event took place. The fact that Dunlap–McCuller was not fired by the day manager, despite his having the authority to do so, could have been construed by the jury as supporting Dunlap–McCuller's denial.

Additional evidence that the jury may have considered included the fact that of the approximately 40 day managers supervised by Gladstone in 1985/86, he could recall only one person who was black, and that person was also the only one he could recall who was over the age of 50. Finally, Gladstone admitted during cross-examination that Dunlap–McCuller was one of the highest paid night managers, and that employees were paid based on their performance.

At the close of plaintiff's case, and again at the close of all of the evidence, defendant moved for dismissal based upon plaintiff's failure to prove a *prima facie* case. Both motions were denied. The jury returned a verdict for Dunlap–McCuller, accompanied by interrogatories in which the jury indicated that plaintiff had been discriminated against because of both his age and his race. The jury also found that Dunlap–McCuller had been terminated in retaliation for having filed a charge of discrimination with the Equal Employment Opportunity Commission. The jury awarded damages of $134,000 on appellant's discrimination claims, and $75,000 on his claim of retaliatory discharge.

Riese moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion for a new trial was granted on June 5, 1991. According to Judge Martin, "the Court's view is that the jury's verdict was so clearly against the weight of the evidence that a new trial should be granted." Appellant moved in this Court to stay the district court's order pending appeal. This motion was denied as non-appealable and a second trial was held in October 1991.

The evidence presented by appellant at the second trial was almost identical to that which he had introduced at the first trial. Not surprisingly, in light of the significant damages awarded to Dunlap–McCuller after the first trial, Riese sought to augment the evidence presented in its defense. Specifically, Riese sought to introduce into evidence two letters purporting to demonstrate that the schools which had granted Dunlap–McCuller his Ph.D. and his degree in law were correspondence schools. These letters were being offered for the purpose of impeaching Dunlap–McCuller. Appellant had testified at his deposition and at trial that he received both degrees after completion of regular courses of study, in-

cluding classroom instruction and seminars in Great Britain. The letter from James Fry, who signed it in his claimed capacity as the president of Blackstone School of Law, and the letter from Bruce Cooper, who signed his letter as the dean-founder of the Braintridge School, contradicted this testimony. The district court found that these letters had not been authenticated. In an effort to authenticate these letters, the district court supervised two telephonic depositions of Fry and Cooper during the middle of the trial. McCuller objected to this procedure, in part, because these two individuals were not included in Riese's witness list or in the pre-trial order. This objection was overruled. These two individuals testified that their schools were correspondence schools, and that while Dunlap–McCuller had received a degree from each of them, he had never attended classes or seminars at the schools. The transcripts of these depositions were subsequently read into the record.

At the conclusion of the second trial the jury returned a verdict in favor of Riese on the discrimination claims. The jury did find that Dunlap–McCuller was fired in retaliation for having filed a charge of discrimination, but only awarded Dunlap–McCuller $1500 in damages. Pursuant to 42 U.S.C. § 1988, Dunlap–McCuller filed for $64,937.50 in attorneys' fees. The district court determined that fees should be limited to $1,000—2% of what the court would have awarded the attorney had Dunlap–McCuller succeeded on all of his claims—because the appellant had only recovered approximately 2% of what he was seeking.

Dunlap–McCuller now appeals.

## DISCUSSION

I. *The District Court's Grant of a New Trial*

■ On appeal, Dunlap–McCuller first argues that the district court abused its discretion in granting Riese's motion for a new trial. Dunlap–McCuller maintains that because there was conflicting evidence concerning his charges of discrimination and retaliation, the task of weighing this

evidence should have remained with the jury. According to Dunlap–McCuller, the district court, by granting a new trial because it found that the jury's verdict was against the weight of the evidence, impermissibly usurped the jury's role as the trier of fact. While we are sympathetic to Dunlap–McCuller's contention, we are constrained by prior precedent in this Circuit, and consequently must hold that the district court's grant of a new trial is not reviewable.

A district court order granting or denying a motion for a new trial on the grounds that a verdict is against the weight of the evidence is not reviewable in this Circuit. *See, e.g., Kirschner v. Office of the Comptroller of the City of N.Y.*, 973 F.2d 88, 95 (2d Cir.1992); *Roberts v. Consolidated Rail Corp.*, 893 F.2d 21, 26 (2d Cir.1989); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 133 (2d Cir.1986); *Portman v. American Home Prods. Corp.*, 201 F.2d 847, 848 (2d Cir.1953) (L. Hand, *J.*). This Circuit's rule is grounded in the Supreme Court's holding in *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 481, 53 S.Ct. 252, 254, 77 L.Ed. 439 (1933) and *United States v. Johnson*, 327 U.S. 106, 111, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946), upholding district court decisions refusing to grant litigants new trials. We believe, however, that different considerations are at issue when a district court grants a motion for a new trial because it finds the verdict to be clearly against the weight of the evidence. *See* 11 Charles A. Wright & Arthur A. Miller, *Federal Practice & Procedures* § 2819, at 123–27 (1973) (criticizing the non-reviewability of the grant of a new trial while also criticizing appellate review of the denial of new trial motions). Specifically, "[a]ppellate action in this context protects the role of the jury, as envisioned by the Seventh Amendment, rather than running contrary to it." *Id.* at 126. Indeed, we note that most other circuits review the grant of a new trial on the grounds of sufficiency of the evidence under an abuse of discretion standard. *See, e.g., Hill v. Winn–Dixie Stores, Inc.*, 934 F.2d 1518, 1528 (11th Cir.1991) (reversing

the grant of a new trial under this standard because there was sufficient evidence to support the jury's verdict); *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6–7 (1st Cir.) (same), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982); *Grove v. Dun & Bradstreet, Inc.*, 438 F.2d 433, 440–41 (3d Cir.) (same), *cert. denied*, 404 U.S. 898, 92 S.Ct. 204, 30 L.Ed.2d 175 (1971); *Duncan v. Duncan*, 377 F.2d 49, 55 (6th Cir.) (same), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). This panel is, nevertheless, not empowered to overturn a longstanding precedent in this Circuit that has recently been reaffirmed by another panel. *See, e.g., Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990); *Kremer v. Chemical Constr. Corp.*, 623 F.2d 786, 788 (2d Cir.1980), *aff'd*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

■ Even if we were so authorized, the issue of whether the district court abused its discretion would be a close one. Almost all of the evidence presented by Dunlap–McCuller was in the form of his own testimony, and this evidence does not preponderate heavily in his favor. On the basis of the cold record on appeal we would not have granted a new trial, because the grant of a new trial on weight of the evidence grounds should be reserved for those occasions where the jury's verdict was egregious. However, such a conclusion is a significant step removed from a holding that the district court abused its discretion. Unlike the district court, we cannot make determinations concerning a witness's credibility. Because Dunlap–McCuller's evidence consisted almost solely of his testimony, the court's evaluation of his credibility was undoubtedly crucial in deciding whether the evidence clearly did not support the jury's verdict. However, we caution that the jury is empowered and capable of evaluating a witness's credibility, and this evaluation should rarely be disturbed.

## II. *The Telephonic Depositions*

■ Dunlap–McCuller next argues that the district court abused its discretion by supervising two telephonic depositions during the middle of the trial, and allowing the testimony given at these depositions to be read into evidence. Specifically, Dunlap–McCuller argues that this procedure was inappropriate because the two individuals deposed were not included in Riese's witness list or in the pre-trial order. This contention is without merit.

A district court's decision to permit or to exclude testimony by a witness who was not listed in the pre-trial order will not be disturbed absent a clear abuse of discretion. *See, e.g., Napolitano v. Compania Sud Americana de Vapores*, 421 F.2d 382, 385–86 (2d Cir.1970); *Clark v. Pennsylvania R.R.*, 328 F.2d 591, 595 (2d Cir.1964), *cert. denied*, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1965); *see also Beissel v. Pittsburgh & Lake Erie R.R.*, 801 F.2d 143, 150 (3d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987). In *Beissel* the court outlined the criteria for evaluating whether an exercise of discretion was appropriate as including: (1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party. 801 F.2d at 150. In applying these criteria to the facts of this case, we find that the trial court did not abuse its discretion in conducting these two depositions and in admitting the testimony given into evidence.

If Dunlap–McCuller had not perjured himself he would not have been prejudiced by the depositions, which were taken solely for the purpose of contradicting statements he had made concerning his educational background. Therefore, any prejudice that resulted was of Dunlap–McCuller's own making and could have been cured by testifying truthfully. These depositions, taken in the district judge's chambers during a recess, did not cause any serious disruption in the trial. Finally, while Riese should have included the two witnesses on its witness list, having had more than ample time to discover their existence and relevance, given the two trials and the long discovery

period that proceeded them, we are not prepared to hold that the district court abused its discretion on the basis of this factor alone.

■ Lastly, we note that Fed.R.Civ.P. 30(b) expressly authorizes telephonic depositions when the court finds that a witness is at a greater distance than 100 miles from the place of the trial or is out of the country. There need only be a *prima facie* showing that would allow the issue of the answering party's identity to be decided by the jury. *First State Bank of Denton v. Maryland Casualty Co.*, 918 F.2d 38, 41 (5th Cir.1990). Therefore, the district court did not err in permitting the two telephone depositions to be taken.

## III. *Damages For Retaliatory Discharge*

■ In carefully reviewing this *pro se* litigant's appeal we conclude, *sua sponte*, that there is no basis in the record for an award of only $1500 on Dunlap–McCuller's retaliation claim. Appellant claimed that he was making $375 per week at the time of his discharge, while Riese's Director of Human Resources testified that Dunlap–McCuller was earning $350 per week as of that date. In any event, there is no indication that Dunlap–McCuller had any income between September 28, 1986, when he was discharged, and October 19, 1986, the date on which he commenced his employment at Macy's. Appellant's loss of salary for just these three weeks totaled at least $1050. In addition, Dunlap–McCuller testified that during the first year of his employment at Macy's his weekly salary was $240, which was at least $110 less than Riese was paying him. After his first year at Macy's, appellant went on to earn more than he earned while employed by Riese. However, because back pay runs from the date of termination until the date of judgment, *see, e.g., Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir.1991), Dunlap–McCuller is entitled to at minimum an additional $5,720. This amount represents the difference between Dunlap–McCuller's salary at Macy's and Riese's representation of the salary that it paid him. In addition, if appellant can show that but for the retalia-

tory firing he would have been promoted by defendant to the position of manager, his damages could be substantially higher.

We note that the district court's charge on the damages issue was somewhat confusing and may have contributed to the unsupported award. The charge appeared to indicate that an award of back pay could only run until the date on which Dunlap–McCuller initiated this action. As we have stated, Dunlap–McCuller is entitled to the amount of salary that he lost from the date of his termination until the date of the judgment. *See, e.g., Weaver*, 922 F.2d at 1528; *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir.1986) ("the court should compute the backpay award from the date of the discriminatory act until the date of final judgment.").

■ On remand, the judge should also consider the equitable remedy of front pay given that reinstatement is impossible at this point. *See Dominic v. Consolidated Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1257 (2d Cir.1987); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728–29 (2d Cir.1984); *see also Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159–60 (6th Cir.1985). Of course, mitigation of damages must be factored in, *Dominic*, 822 F.2d at 1258, and an award of front pay cannot be unduly speculative. *See Whittlesey*, 742 F.2d at 729. In evaluating whether front pay should be awarded, the district court should determine "whether the award will aid in ending illegal discrimination and rectifying the harm it causes." *Shore*, 777 F.2d at 1159; *see also Thompson v. Sawyer*, 678 F.2d 257, 286 (D.C.Cir. 1982).

## IV. *Award of Attorneys' Fees*

■ Because we are vacating the damage award and remanding for a trial limited to the issue of damages, the district court must recalculate its award of attorneys' fees after taking into account the increase in damages obtained and attorney hours billed. However, in facilitating this process we must take note of Dunlap–McCuller's contention that the district court erred in its initial calculation by

awarding him only 2% of the attorneys' fees he had sought. The district court had reasoned that because the appellant had only recovered approximately 2% of what he was seeking, Dunlap–McCuller was entitled to only 2% of what the court would have awarded the attorney had plaintiff-appellant succeeded on all of his claims. Dunlap–McCuller maintains that this determination constituted clear error. We agree.

While a partially successful plaintiff should be awarded "only that amount of fees that is reasonable in relation to the results obtained," *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983), this Court has consistently rejected the notion that an award of attorneys' fees be proportional to the amount of damages recovered. *See, e.g., Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522, 526–27 (2d Cir.1991) (holding that lodestar was not subject to reduction to achieve proportionality with damages award); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985) (same). "Proportionality is contrary to our national policy of encouraging the eradication of every type of racial discrimination; it should not be tolerated." *Cowan*, 935 F.2d at 527–28. The district court's reduction was especially inappropriate in the instant case, because except for the court's grant of defendant's motion for a new trial, appellant would have achieved complete success as a result of the first trial. Furthermore, to the extent that it can be determined, counsel's preparation for the first trial should be compensated to the degree it contributed to appellant's representation at the second trial.

## CONCLUSION

Based on the foregoing, we affirm the district court's grant of a new trial, and we vacate the judgment entered by the district court after the second trial and remand with instructions to hold a new trial limited to the issue of damages. Accordingly, the district court's award of attorneys' fees is also vacated and remanded, and on remand the district court is instructed to set adequate attorneys fees consistent with this opinion.

WALKER, Circuit Judge, concurring:

I agree that our precedents, most recently *Kirschner v. Office of the Comptroller of the City of New York*, 973 F.2d 88, 96 (2d Cir.1992), render non-reviewable a district court's grant of a motion for a new trial based upon a verdict against the clear weight of the evidence. Wright and Miller, criticizing the Second Circuit rule foreclosing appellate review, point out that "[a]ppellate action in this context protects the role of the jury, as envisioned by the Seventh Amendment...." 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2819, at 126 (1973). As my colleagues note, this criticism has led most other circuits to reject our rule and review these nullifications of jury verdicts under an abuse of discretion standard. *See* Majority Opinion at 158–59. Indeed, some of our sister courts apply "an extremely stringent" standard of review to grants of new trial motions on evidentiary grounds "to protect a party's right to a jury trial." *Redd v. City of Phenix City*, 934 F.2d 1211, 1214 (11th Cir.1991); *see, e.g., Digidyne v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir.1984) (same); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 931 (5th Cir.1982) (applying "strict" standard of review).

Because I am bound by Second Circuit precedent, I concur in the majority's conclusion that plaintiff's appeal from the grant of a new trial must fail. My difference with my colleagues lies not with the outcome, but with the analysis, unnecessary in my view, of how we would conduct a review if we were applying an abuse of discretion standard.

My colleagues note that "the grant of a new trial on weight of the evidence grounds should be reserved for those occasions where the jury's verdict was egregious." *See also Redd*, 934 F.2d at 1214 (" 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great, not merely the greater[,] weight of the evidence' ") (quot-

ing *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir. 1980)); *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir.) (new trial properly granted on weight of the evidence grounds only where "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice....") (citation omitted), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982). They also recognize that where—as here—witness credibility is involved, "the jury is empowered and capable of evaluating a witness[ ] ... and this evaluation should rarely be disturbed." Under this standard, I agree with my colleagues that, "[o]n the basis of the cold record on appeal, we would not have granted a new trial...."

However, the majority opinion goes on to conclude that the district court did not abuse its discretion in granting Riese's new trial motion because "almost all of the evidence presented by Dunlap–McCuller was in the form of his own testimony and this testimony does not preponderate in his favor." The opinion adds that the credibility determination rests with the district court, to which it defers. It seems to me that this analysis confuses the need to respect the discretion of the trial court with the proper legal test for ruling upon a new trial motion.

A circuit court must accord deference to the district court in matters involving fact finding. However, the legal standard applicable to a new trial motion is the same at the district and circuit court levels. As set forth above, a court should grant a motion for a new trial on evidentiary grounds only where the verdict is contrary to the *clear weight* of the evidence. The majority asserts that we must defer to the district court and affirm the nullification of a plaintiff's verdict where the record reveals that a case is merely close. I respond that the district court's discretion is limited by the Seventh Amendment and the governing legal standard. Where the evidence is equivocal or merely fails to preponderate in plaintiff's favor, an appellate court must accord greater deference to the jury than to the district court. *See, e.g., Redd*, 934

F.2d at 1215 ("When there is some support for a jury's verdict, it is irrelevant what we or the district court would have concluded."); *Coffran*, 683 F.2d at 7 (reversing nullification of jury verdict on evidentiary grounds where case was "factually ... very close and difficult").

In all other respects, I concur in the majority's opinion and in the result.