104 F.3d 356
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Maureen O'CONNOR, Plaintiff-Appellant,
v.
VIACOM INC./VIACOM INTERNATIONAL INC., Defendant-Appellee.
 No. 96-7641.
 United States Court of Appeals, Second Circuit.
 Dec. 16, 1996.
 
 APPEARING FOR DEFENDANT-APPELLEE: MAUREEN O'CONNOR, pro se, Bronx, NY. KENNETH A. MARGOLIS, Kauff, McClain & McGuire (David A. Lebowitz, of counsel), New York, NY.
 PRESENT: VAN GRAAFEILAND, JACOBS, and CALABRESI, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York, and was argued pro se.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.
 
 
 3
 Maureen O'Connor appeals pro se from a judgment of the District Court for the Southern District of New York (McKenna, J.) granting summary judgment to her former employer, Viacom Inc., and dismissing O'Connor's Title VII and ADEA complaint for failure to establish that the stated reasons for her termination were pretextual.
 
 
 4
 O'Connor, who classifies her ancestry as "South of Ireland-Irish," worked as a "producer reporting analyst" at Viacom from 1985 until her termination on February 15, 1991. She was hired by the then-supervisor of her department, and received two performance evaluations of "competent" (the middle ranking on a five-level scale). The first evaluation, dated December 1986, indicated that she needed improvement in typographical accuracy and punctuality. The second, dated December 1987, recited that her prior deficiencies had been "fully improved upon."
 
 
 5
 O'Connor began to receive more critical evaluations after Carolyn Moore was hired in 1987 as the new department manager. Moore's duties included the preparation of performance evaluations, which were subject to review by Janis Millerman, a vice-president of Viacom. Millerman had hired Moore shortly after her duties were adjusted to include greater responsibility for the Producer Reporting Department.
 
 
 6
 O'Connor's evaluations in December 1988 and December 1989 characterized her performance as merely "adequate" (the second-lowest ranking on the five-level scale). These evaluations specified that O'Connor lacked judgment, punctuality, and technical competence, and that she required significant supervision. In her May 1990 evaluation, O'Connor received a rating of "needs improvement."[1] O'Connor responded in a series of letters, arguing, inter alia, that she had expected an excellent review because of the extra work she had performed and her significant quantity of overtime; that another employee had received a promotion over her, even though he was unable to complete his work on time and made an error in a report which O'Connor had caught; and that she felt she was being reviewed more harshly than her co-workers.
 
 
 7
 In July 1990, Moore and Millerman sent O'Connor a memorandum listing numerous specific problems with her work, and indicating that her overall performance needed improvement. In January 1991, a final warning was issued, reiterating O'Connor's problems and her failure to remedy them. On February 15, 1991, Moore sent O'Connor a termination letter, which stated that she lacked efficient planning and organizational skills, and that her difficulties in using her computer properly demonstrated an inability to meet the requirements of her position. O'Connor was 55 years old at that time. After O'Connor's termination, her position was upgraded to "Senior Producer Reporting Analyst," and the salary was increased by half. Moore and Millerman hired Joe DiGeso, a 24 year old who had had experience with a variety of computer programs and was able to prepare complex reports using the programs.
 
 
 8
 On April 13, 1993, O'Connor filed a pro se complaint in the Southern District of New York. O'Connor's complaint, which was amended twice, initially alleged that her termination from Viacom violated Title VII. O'Connor alleged that her supervisors, Moore and Millerman, had 1) evaluated her unfairly in relation to non-Irish employees, 2) refused to grant her raises or promotions because she was Irish, 3) terminated her because she was Irish and because she had filed a charge with the New York State Department of Human Rights, and 4) harassed her by making derogatory remarks concerning her national origin. The second amendment to the complaint added an age discrimination claim under the ADEA, alleging that Moore had 1) conspired before joining the Producer Reporting Department to terminate O'Connor, 2) intentionally downgraded O'Connor's performance evaluations and used a different evaluation method than the one used for younger employees, and 3) promoted younger staff members who were no more qualified or competent than O'Connor.
 
 
 9
 At her deposition, O'Connor testified that Millerman, who is not Irish, told her in 1989 that she would not go to the St. Patrick's Day parade because the Irish were "like animals." O'Connor also alleged that Moore, who is of mixed Irish, Scottish, and English descent, called her a "mick" on two occasions: once after handing her a low performance evaluation and again after handing her a final warning. O'Connor did not discuss these remarks with a superior or anyone else.
 
 
 10
 On March 14, 1995, Viacom moved for summary judgment, on the grounds that 1) O'Connor had failed to make out a prima facie case of national origin and age discrimination, 2) Viacom had articulated legitimate, nondiscriminatory reasons for O'Connor's discharge, 3) O'Connor had offered no evidence to show that the decision to terminate her for poor performance was a pretext for intentional discrimination, and 4) O'Connor had failed to establish a prima facie case of retaliation.
 
 
 11
 The district court filed a Memorandum and Order on April 23, 1996, granting Viacom's motion for summary judgment. The court proceeded on the assumption that O'Connor had established a prima facie case of national origin discrimination, noted that Viacom had come forward with evidence of a non-discriminatory explanation for the adverse employment action, and held that O'Connor had failed to show that the explanation was pretextual. The court also found that O'Connor had not supported her age discrimination claim. This appeal followed. On August 8, 1996, we denied a motion by Viacom for summary affirmance.
 
 
 12
 On appeal, O'Connor argues that the district court improperly granted summary judgment on her national origin and age discrimination claims because 1) she made out a prima facie case of discrimination, and 2) Viacom's explanation for her termination was pretextual.
 
 
 13
 We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor. Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993). However, the "mere existence of a scintilla of evidence in support of the [non-movant's] position" is insufficient to warrant a grant of summary judgment; a juror must be able to "reasonably find" for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We therefore must determine whether a reasonable factfinder could find that O'Connor had shown that Viacom's explanation for the termination was pretextual. Because we believe that no reasonable factfinder could do so, we need not address the issue of whether O'Connor made out a prima facie case of discrimination.
 
 
 14
 The record is replete with evidence indicating O'Connor's poor job performance. A jury may reject employer evaluations as justification for termination, see Kirschner v. Officer of the Comptroller, 973 F.2d 88, 94-95 (2d Cir.1992), but O'Connor had received two mediocre performance reviews even before Moore and Millerman became her supervisors.
 
 
 15
 The only grounds offered for attributing O'Connor's termination to her ancestry are the three isolated remarks made by Moore and Millerman. We conclude that these remarks are insufficient to show that Viacom's legitimate explanation for O'Connor's termination was a pretext.
 
 
 16
 Stray workplace remarks, without a clearly demonstrated nexus to the adverse employment action at issue, do not alone suffice to defeat a motion for summary judgment. See Rush v. McDonald's Corp., 966 F.2d 1104, 1116 (7th Cir.1992); Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir.1989); see also Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) (plurality opinion); id. at 277 (O'Connor, J., concurring). O'Connor has shown no connection whatsoever between Millerman's comment on the St. Patrick's Day parade and O'Connor's termination. O'Connor therefore offers no evidence to suggest that Millerman's role in the adverse evaluations, the final warning, and the termination decision was motivated by racial animus. As to Moore's use of the term "mick," Moore denies it and Viacom does not concede that it would be a slur if used. For present purposes, we assume that Moore used the term, and that it is a slur. But the sole nexus to O'Connor's termination is that O'Connor heard the term once after Moore handed O'Connor a negative evaluation and again after handing O'Connor the final warning. However, the required nexus is not established solely by proximity in time. We agree with the Seventh Circuit that such stray remarks cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question. See Rush, 966 F.2d at 1116; McCarthy v. Kemper Life Ins. Co., 924 F.2d 683, 686-87 (7th Cir.1991).
 
 
 17
 We have examined O'Connor's remaining contentions, and notwithstanding her powerful oral argument, find them to be without merit. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Sometime in 1990, the steps of the scale were renamed. "Needs improvement" under the new scale, like "adequate" under the old scale, was the second-lowest ranking on a five-level scale