115 F.3d 116
 73 Fair Empl.Prac.Cas. (BNA) 1736,
70 Empl. Prac. Dec. P 44,732, 65 USLW 2806
 Nathan FIELDS, Plaintiff-Appellant,
v.
NEW YORK STATE OFFICE OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES; Oswald D. Heck
Developmental Center; Michael Cser;
John Mangione, Defendants-Appellees.
 No. 623, Docket 96-7523.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 2, 1996.
Decided May 23, 1997.
 
 Gerald H. Katzman, Pattison, Sampson, Ginsberg & Griffin, Troy, NY, for plaintiff-appellant.
 Victor Paladino, Asst. Atty. Gen., Albany, NY (Dennis C. Vacco, NY State Atty. Gen., Peter H. Schiff, Deputy Solicitor Gen., Nancy A. Spiegel, Asst. Atty. Gen., Albany, NY, on the brief), for defendants-appellees.
 Before: NEWMAN, Chief Judge, OAKES and WINTER, Circuit Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 This appeal presents several issues concerning the framing of jury instructions in cases governed by the Civil Rights Act of 1991. Specifically, the issues are (i) whether a plaintiff in a Title VII case may prevail by proving that discrimination was a motivating factor, without proving that the defendant's proffered reason was a pretext, (ii) whether the distinction between so-called "pretext" cases and "dual motivation" cases has survived the 1991 amendments to Title VII, and (iii) if so, under what circumstances is a plaintiff entitled to have the jury instructed on the defendant-employer's "dual motivation" affirmative defense. These issues arise on an appeal by plaintiff Nathan Fields from the July 31, 1996, amended judgment of the District Court for the Northern District of New York (Gustave J. DiBianco, Magistrate Judge) entered after a jury verdict in favor of defendants New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD"), Oswald D. Heck Developmental Center ("Heck"), Michael Cser, and John Mangione. We conclude that a Title VII plaintiff need not always prove pretext, though it must always prove that discrimination was a motivating factor, and that an instruction on the affirmative defense of dual motivation is not required in all cases and was not required on the evidence in this case. We therefore affirm the amended judgment of the District Court.
 
 Background
 
 2
 Fields, a Black male, was hired by the OMRDD in 1985 as a "Grade 8" maintenance assistant (electrical) in the electrical shop at Heck. He was promoted to Grade 9 in 1986. In 1989, Fields joined the Navy and went on military leave without pay from the OMRDD. In 1992, he was discharged from the Navy and returned to work at Heck. All events giving rise to the present suit occurred after plaintiff's 1992 reinstatement.
 
 
 3
 Fields's direct supervisor at Heck was defendant Cser, an electrician and Grade 14 maintenance supervisor. Cser supervised all of Heck's maintenance work-force, which included between 20 to 40 employees divided among the electrical, plumbing, and building shops. The electrical shop had five employees: two Grade 12 electricians (McCray, a Black male, and Kohler, a White male), two Grade 9 maintenance assistants specializing in electrical work (Fields and Ayoub, a male of Egyptian descent), and one Grade 9 maintenance assistant (Montenaro, a White male). The maintenance department is one of six departments under the supervision of defendant Mangione, the plant superintendent at Heck.
 
 
 4
 Fields complains of disparate treatment on the basis of race in various aspects of his employment at Heck. His allegations can be divided into seven categories: denial of promotion; unfair discipline; discriminatory work shift assignment; discriminatory overtime assignment; discriminatory job task assignment; pairing of workers by race; and general harassment. A brief summary of the testimony and evidence offered at trial follows.
 
 
 5
 First, Fields claimed that he twice applied for Grade 12 positions, but failed to receive any promotions since his 1992 reinstatement. In December 1993, for instance, plaintiff applied for a Grade 12 general mechanic position at a community residence project sponsored by the OMRDD. The qualifications for this position included experience in carpentry, a valid New York driver's license, and good time, attendance, and performance records. Fields contended that several of these requirements were specifically added to disqualify him for this promotion, though he offered no support for this allegation. Moreover, Fields conceded that he has little experience in carpentry and has accumulated poor time, attendance, and performance records during his tenure at Heck. Additionally, Fields admitted that he failed to follow through with his application for the promotion. Although requested by Mangione to provide proper documentation of his qualifications for the promotion, plaintiff submitted nothing beyond an undated, handwritten note to support his candidacy. The three persons eventually selected for promotion were White males. Each possessed the requisite qualifications and documentation.
 
 
 6
 Second, Fields testified that he was discriminatorily selected to receive a notice of discipline based on his time and attendance records, whereas a White employee who also missed much time from work was not similarly disciplined. Fields conceded, however, that while he had accumulated over 500 hours of vacation, sick, and personal leave credits during 1994, the White employee had accumulated only slightly more than 100 hours of leave credits during the same period. The White employee, moreover, had a legitimate excuse: He was suffering from a prolonged illness during that year.
 
 
 7
 Third, Fields stated that when he returned from the Navy in 1992, he was assigned to work the disfavored Tuesday to Saturday shift, but that a White employee with less seniority was allowed to work the standard Monday to Friday shift. Plaintiff claimed that this violated the terms of the collective bargaining agreement between his union and the OMRDD, and constituted evidence of racial discrimination. However, plaintiff conceded that he had worked the Tuesday to Saturday shift prior to his departure for the Navy, and that he had initially agreed to work this shift upon his return in 1992. Moreover, plaintiff failed to rebut the defendants' testimony that it was the general practice at Heck to assign shifts to returning veterans based on the facility's needs and not to displace a current employee from his shift in order to accommodate a returning veteran.
 
 
 8
 Fourth, Fields complained that Cser did not fairly distribute unscheduled overtime (i.e., overtime earned on emergency assignments) among electrical shop employees. Plaintiff admitted, however, that he was unaware of the skills generally required in emergency overtime situations. Cser testified that he assigned unscheduled overtime based on the nature of the work, the location of the emergency, the availability of employees, their qualifications, and their proximity to the emergency work site. He also estimated that approximately 80 percent of emergency overtime involved plumbing tasks. Fields did not deny that he has little experience in plumbing work. Cser's testimony that Fields was often difficult to locate, or otherwise unavailable, during his off hours was also unrebutted.
 
 
 9
 Fifth, Fields testified that Cser disproportionately assigned the tedious and difficult "ballast" work to minority employees in the electrical shop. Plaintiff offered the testimony of a statistician who analyzed the assignment of ballast work and concluded that such assignments were not random in the statistical sense: minority employees performed a disproportionate amount of this unpleasant work. Cser testified that he assigned all work, including ballast work, based on a consideration of numerous factors, including the nature of the work, its priority, the availability of employees, and an employee's job-grade level and qualifications. Fields's expert acknowledged that he did not factor any of these elements into his analysis, which took into account solely the employee's race.
 
 
 10
 Sixth, Fields contended that Cser and Mangione assigned Whites to work with other Whites, and minorities to work with other minorities. The plaintiff's statistician confirmed that pairing assignments in the electrical shop were not random: minorities were paired with other minorities for a disproportionate percentage of jobs. Defendants conceded that workers were not randomly paired; rather, they testified that pairing decisions were based on the nature of the job to be done, the location of the work, the skills of the available workers, and the need to pair workers with complementary expertise. Fields's statistician did not take any of these factors into account in his analysis.
 
 
 11
 Finally, Fields alleged that he witnessed or experienced several incidents of general harassment at Heck. First, he testified that on two or three occasions, he heard White employees make racial jokes or slurs against minority employees at Heck. Fields admitted, however, that he has never heard Cser or Mangione utter a racial or ethnic slur. Second, Fields contended that Cser and Mangione occasionally confronted him and accused him of disabling the fire alarm system, even though others working on the system could also have been responsible. Fields would not say, however, that any of these accusations were made because of his race. Third, Fields claimed that Cser frequently checked on him on the weekends and that this was not normal and was racially motivated. Cser testified that it was his job, as supervisor, to check on his workers and that it was not unusual for him to go into the office on weekends.
 
 
 12
 Fields commenced this action in May 1994, alleging racial discrimination in violation of Title VII of the 1964 Civil Rights Act and various other federal and state civil rights statutes. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, a jury trial was held in the fall of 1995 before Magistrate Judge DiBianco. The jury returned a verdict in favor of all the defendants on all of Fields's remaining causes of action. Fields's post-verdict motions for a new trial and for relief from the judgment on the ground of mistake were denied.
 
 Discussion
 
 13
 Fields contends that the jury charge and the verdict form erroneously described the law of employment discrimination under Title VII and that these errors warrant a new trial. To assess his contentions we must bear in mind a distinction that underlies all Title VII cases, and, indeed, all cases in which any adverse action is alleged to have been taken for an impermissible reason--the distinction between single motive and dual (or multiple) motive cases. In most cases involving a discrimination claim, the plaintiff alleges that the adverse action (adverse employment action in Title VII cases) was taken because of an impermissible reason, such as race, ethnic origin, or gender, and the defendant denies improper motivation and asserts that it acted for a permissible reason. The ultimate issue in such cases is whether the plaintiff has sustained its burden of proving that the adverse action was motivated by an impermissible reason. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In some cases, however, even if the plaintiff succeeds in proving motivation based on an impermissible reason, the defendant advances the additional contention that it would have taken the same adverse action for a permissible reason. This additional contention is an affirmative defense, on which the defendant bears the burden of proof. See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).
 
 
 14
 Cases in the first category are often called "pretext cases," because the plaintiff usually challenges the defendant's proffered assertion of a permissible reason as a pretext for the impermissible reason of discrimination. As will be seen, however, it might be more useful to call such cases "single issue motivation cases," because the fact-finder must decide only the single issue of whether an impermissible reason motivated the adverse action. Cases in the second category are appropriately called "dual issue motivation cases" because the fact-finder must decide both the issue of whether the plaintiff has proved that an impermissible reason motivated the adverse action and the additional issue of whether the defendant has proved that it would have taken the same action for a permissible reason.
 
 
 15
 In this case, though Fields focuses his principal challenge on whether the case should have been submitted to the jury as a "dual issue motivation case," we consider first his contention that the jury was improperly instructed on how it should determine whether the adverse employment action was motivated by an impermissible reason, since that issue arises whether or not the case should have been submitted to the jury as a dual issue motivation case.
 
 I. The Charge on Discrimination
 
 16
 Fields contends that the jury charge and the verdict form incorrectly required him to prove both that the defendant's proffered nondiscriminatory reason was pretextual and that a discriminatory reason motivated the employer's adverse action. He does not dispute that he must prove a discriminatory motive; he disputes only that he must also prove that the employer's proffered reason was a pretext.
 
 
 17
 In some cases, the distinction Fields advances has little, if any, significance. For example, a plaintiff says that he was fired because of his race, the employer responds that he fired the employee because he was regularly late for work, and the fact-finder determines whether the plaintiff has proved that the firing was motivated by race. In this example, both sides agree that there is only one motivation, and the issue is whether it was race or lateness. If the plaintiff proves that the adverse action was motivated by race, he has necessarily disproved that it was motivated by lateness. In other words, he has simultaneously proved discrimination and also proved that the proffered explanation was a pretext.
 
 
 18
 However, even before the 1991 Act, courts recognized that more than one reason can motivate an employer's adverse action. Thus, in the above example, the employer might have had in mind both race and lateness. Consequently, even before the 1991 Act, courts said that the plaintiff had to prove that an impermissible reason, even though not the only reason for an adverse employment decision, was a "substantial" or "motivating" factor, see Sherkow v. Wisconsin, 630 F.2d 498, 502 (7th Cir.1980), or "made a difference" in the decision, see Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989); cf. Paolillo v. Dresser Industries, Inc., 865 F.2d 37, 40 (2d Cir.), as amended, 884 F.2d 707 (2d Cir.1989) (ADEA). But the illegitimate reason could be a substantial or a motivating factor, or could have made a difference, even though a legitimate reason was also part of the employer's motivation. If the plaintiff presented evidence to prove that the impermissible reason was at least in part a motivating factor for the adverse decision, the defendant had the option of attempting to prove, as an affirmative defense, that it would have taken the same action for the permissible reason alone. Or the defendant could decline this option and argue to the fact-finder that the plaintiff had failed to prove that the impermissible reason was even in part a motivating factor.
 
 
 19
 The 1991 Act supports Fields's contention that he need not prove that the employer's proffered explanation was a pretext. Section 107(a) provides:
 
 
 20
 [A]n unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice.
 
 
 21
 42 U.S.C. § 2000e-2(m) (emphasis added). Since Congress confirmed the pre-1991 understanding of Title VII that race (or other impermissible factors) need not be the sole motivation for adverse employment action, it necessarily follows that a Title VII plaintiff can prevail by proving that an impermissible factor was "a motivating factor," without proving that the employer's proffered explanation was not some part of the employer's motivation.
 
 
 22
 Fields is therefore entirely correct in his implicit assumption that he need not prove that discrimination was the sole motivating factor. He is also correct in contending that he need not prove that the employer's proffered explanation was pretextual. Instead, he was entitled to have a verdict in his favor if he could persuade the jury that race was a substantial motivating reason for the adverse employment actions of which he complained. As we have recently stated, a Title VII plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decisions, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." Cronin v. Aetna Life Insurance Co., 46 F.3d 196, 203 (2d Cir.1995); cf. Hagelthorn v. Kennecott Corp., 710 F.2d 76, 82 (2d Cir.1983) (ADEA).
 
 
 23
 Though there are sentences in some opinions to the effect that a Title VII plaintiff must prove "both that the [defendant's proffered] reason was false, and that discrimination was the real reason," St. Mary's, 509 U.S. at 515, 113 S.Ct. at 2752, these decisions do not require a finding of pretext in addition to a finding of discrimination; they make the quite different point that a Title VII plaintiff may not prevail by establishing only pretext, but must prove, in addition, that a motivating reason was discrimination. See id. at 511, 113 S.Ct. at 2749. But though a plaintiff may not prevail only by showing that a proffered explanation is a pretext, it is not required to make such a showing. Since a plaintiff prevails by showing that discrimination was a motivating factor, it can invite the jury to ignore the defendant's proffered legitimate explanation and conclude that discrimination was a motivating factor, whether or not the employer's proffered explanation was also in the employer's mind.
 
 
 24
 Though Fields is correct that he was not required to disprove that the employer's proffered reason was a pretext, he is not entitled to a new trial, because the charge, fairly read, did not place such a burden upon him. The charge included the following instruction:
 
 
 25
 Once the defendants have presented a legitimate, nondiscriminatory basis for taking the adverse employment decision against the plaintiff, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendants are not the true reasons but are a pretext for discrimination by proving either that a discriminatory motive, more likely than not, motivated the defendants or that the reasons given by the defendants are not true and that discrimination is the real reason for the actions. The burden of proof in regard to the presence of discrimination always remains with the plaintiff.
 
 
 26
 Trial Tr. at 1583-84 (emphasis added). Though this instruction was needlessly confusing, it ultimately informed the jury that there were two distinct ways for the plaintiff to prevail: either by proving only that "a discriminatory motive, more likely than not, motivated the defendants" or by proving both "that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." Proving a discriminatory motive by showing that the employer's proffered explanation was pretextual was not required; the charge permitted the jury to consider discrimination without regard to the proffered explanation, and recognized that proving that the proffered explanation was a pretext for discrimination was simply one alternative way of proving discrimination.
 
 
 27
 Moreover, in this case, the issues were not presented to the jury on a dual motivation theory; the issue was essentially whether the adverse actions were taken because of race, as the plaintiff contended, or because of legitimate reasons, as the employer contended. Proving discrimination in this case would necessarily have negatived legitimate reasons. On the ultimate issue, the plaintiff had the burden of persuasion, and the jury was not persuaded.
 
 II. Lack of a Dual Motivation Charge
 
 28
 Over the plaintiff's objection, the Magistrate Judge declined to submit the case to the jury as a dual motivation case. Specifically, Judge DiBianco rejected both Fields's argument that the 1991 Civil Rights Act abolished the distinction between dual motivation and pretext cases, and his alternative argument that, even if the distinction survived the 1991 Act, he presented sufficiently compelling evidence to entitle him to a dual motivation charge under the governing case law in this Circuit.
 
 
 29
 Usually, it is the defendant who wants the jury instructed on an affirmative "dual motivation" defense. Yet some defendants prefer not to have such an instruction. They would apparently prefer to stand or fall on the issue of whether the plaintiff has proved that discrimination was a motivating factor, rather than add an affirmative defense of what the defendant would have done in the absence of discrimination. Perhaps they fear that if the jury is correctly told that the employer bears the burden of persuasion on the affirmative defense, the jury might mistakenly dilute the plaintiff's burden to prove discrimination, or even become confused and mistakenly think that the employer must prove that it did not discriminate. Avoiding all mention of a defendant's burden of proof might seem to some defendants to avoid these risks.
 
 
 30
 Despite the preference of some defendants not to have an affirmative defense instruction even where the evidence permits it, we have ruled that in some limited circumstances a plaintiff is entitled to have the instruction given. See Cabrera v. Jakabovitz, 24 F.3d 372, 382-83 (2d Cir.1994); Ostrowski v. Atlantic Mutual Insurance Cos., 968 F.2d 171, 181 (2d Cir.1992); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir.1992). We have recognized that once the jury has heard evidence about what the employer would have done in the absence of discrimination, some plaintiffs might wish to avoid the risk that the jury would mistakenly believe that the plaintiff must prove that the same adverse action would not have been taken, whereas if the dual motivation issue is correctly submitted, the burden is on the defendant to prove that it would have taken the same action in the absence of discrimination.
 
 
 31
 We have emphasized, however, that for a plaintiff to be able to insist on a dual motivation charge, there must either be direct evidence of discrimination, Tyler, 958 F.2d at 1187, or circumstantial evidence that is "tied directly to the alleged discriminatory animus," Ostrowski, 968 F.2d at 182. This latter approach has been called the "circumstantial-plus" standard.[1] We have illustrated examples of the limited type of evidence that would require a "dual motivation" instruction requested solely by the plaintiff:
 
 
 32
 [If] the plaintiff's nonstatistical evidence is directly tied to the forbidden animus, for example policy documents or statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit, that plaintiff is entitled to a burden-shifting instruction.
 
 
 33
 Id. (emphasis added). However, we have cautioned that
 
 
 34
 purely statistical evidence would not warrant such a charge; nor would evidence merely of the plaintiff's qualification for and the availability of a given position; nor would "stray" remarks in the workplace by persons who are not involved in the pertinent decisionmaking process.
 
 Id.[2]
 
 35
 Fields contends both that the 1991 Act requires a dual motivation instruction in all cases, and that, in any event, the evidence required such an instruction in this case.
 
 
 36
 A. Effect of the 1991 Act on dual motivation instructions. Fields's first argument is that 1991 Civil Rights Act abolished the distinction between the two types of jury charges and that all cases submitted to the jury pursuant to this law should include an instruction on the defendant's affirmative defense. As we have noted, section 107(a) of the 1991 Act confirms the prior understanding that a Title VII plaintiff wins by proving that an impermissible reason was "a motivating factor" for an adverse employment decision. More pertinent to dual motivation cases, section 107(b) of the Act provides:
 
 
 37
 On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--
 
 
 38
 (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
 
 
 39
 (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A) [barring remedies for adverse action actually taken for permissible reasons].
 
 
 40
 42 U.S.C. § 2000e-5(g)(2)(B). Thus, Congress changed pre-1991 law so that the affirmative defense that the adverse action would have been taken for a legitimate reason no longer provides insulation to the employer from all liability, but only limits the relief to which the plaintiff is entitled.
 
 
 41
 Fields contends that the wording of section 107(a), by recognizing that an impermissible reason might be one of multiple factors for an adverse employment decision, indicates that Congress intended to treat all cases governed by the 1991 Act as dual motivation cases. Plaintiff's interpretation of the 1991 Act appears to be supported by the Eighth Circuit and a leading commentary in this field. See Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit at 8-52 to 8-55 (West 1993) ("Eighth Circuit Model Instructions"); 5 Leonard B. Sand et al., Modern Federal Jury Instructions, § 88.04 at 88-227 (1996) (noting that 1991 Act "utilizes an analysis similar to that established by case law in 'mixed motive' cases"). The Eighth Circuit manual and the Sand treatise suggest that both parts of the dual motivation instruction should be submitted to the jury at the same time in all cases governed by the 1991 Act, with the added reminder that the jury should consider the affirmative defense only after it has "found for the plaintiff on the primary issue of liability" at the first stage. Id. at 88-228; see Eighth Circuit Model Instructions, supra, Instructions 5.01 and 5.01A; 5 Sand et al., supra, Instructions 88-42 and 88-43; see also 3 Edward J. Devitt et al., Federal Jury Practice and Instructions: Civil and Criminal § 104.03 at 153-57 (West 1996).
 
 
 42
 We reject Fields's reading of the 1991 Act as requiring a dual motivation charge in every Title VII case. As already noted, such an instruction informs the jury of the nature and existence of the defendant's affirmative defense. Although in most cases this instruction should not be given unless the defendant itself requests it, we have ruled, as explained above, that in some narrowly defined circumstances, the plaintiff can "impose" on a reluctant defendant an affirmative defense instruction supported by the evidence.[3] See Ostrowski, 968 F.2d at 181-82.
 
 
 43
 Section 107(a) of the 1991 Act, on which Fields relies, has nothing to do with the question of when the plaintiff is entitled to have the jury informed of an affirmative defense not desired by the defendant. See Perkins v. Brigham & Women's Hospital, 78 F.3d 747, 750 n. 5 (1st Cir.1996); Tyler, 958 F.2d at 1183. Rather, this section modifies Price Waterhouse to make sure that a successful affirmative defense only limits the plaintiff's relief, rather than avoiding the defendant's liability. See Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir.1995); see also Hook v. Ernst & Young, 28 F.3d 366, 370-71 (3d Cir.1994). Additionally, nothing in the legislative history supports Fields's interpretation. On the contrary, the House Committee report makes clear that section 107 was enacted solely to overrule the part of Price Waterhouse that allowed an employer to avoid all liability by prevailing on its dual motivation defense. See, e.g., H.R.Rep. No. 102-40(I), at 45-46, 48-49, reprinted in 1991 U.S.C.C.A.N. 549, 583-84, 586-87.
 
 
 44
 Though section 107(b) of the 1991 Act modifies Price Waterhouse by altering the legal consequence of a successful showing by the defendant on its affirmative defense, the Act is silent on the separate and distinct question of when this defense must be submitted to the jury at the plaintiff's request and over the defendant's objection. See Tyler, 958 F.2d at 1183 ("[T]he Civil Rights Act of 1991 does not address our biggest problem: whether Price Waterhouse requires the plaintiff to show 'direct evidence' of discrimination as a precondition to shifting into mixed-motives analysis."). We therefore reject Fields's first argument; the distinction between "dual motivation" and "substantial motivation" jury instructions survives the 1991 Act.[4]
 
 
 45
 B. Was plaintiff entitled to a dual motivation instruction in this case? Fields contends that, even if a dual motivation charge need not be given in every Title VII case, he was entitled to such a charge in this case under the "circumstantial-plus" standard established by this Circuit. This contention must be rejected because Fields clearly has not met the requirements set forth in Ostrowski. At trial, Fields produced statistical and anecdotal evidence showing that (i) he was not promoted, but White employees were; (ii) he was not given desirable work shifts, work assignments, and job pairings, but White employees were; (iii) he was occasionally disciplined for conduct that White employees engaged in with impunity; and (iv) he occasionally heard his co-workers make racial slurs or jokes. The plaintiff has thus presented precisely the kind of statistical and other circumstantial evidence, merely hinting at the possibility of unfair treatment on account of his race, that we have ruled would be insufficient to entitle a plaintiff to a dual motivation instruction. See Ostrowski, 968 F.2d at 182 (noting that "purely statistical evidence," evidence of "plaintiff's qualification for and the availability of a position," and evidence of " 'stray' remarks in the workplace by persons who are not involved" in decisionmaking process do not entitle plaintiff to "same decision" instruction); see also Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 508 n. 6 (2d Cir.1994); Kirschner v. Office of Comptroller of City of New York, 973 F.2d 88, 93 (2d Cir.1992). None of the evidence offered by Fields at trial could be said to "be tied directly to the alleged discriminatory animus." Ostrowski, 968 F.2d at 182. He did not present, for instance, any "policy documents or statements of a person involved in the decisionmaking process that reflect a discriminatory" intent. Id. Unlike the plaintiffs in Price Waterhouse, Tyler, and Ostrowski, Fields has produced neither a "smoking gun" nor a "thick cloud of smoke" to support his allegations of discriminatory treatment. Tyler, 958 F.2d at 1187. The District Court did not abuse its discretion in refusing to instruct the jury on a dual motivation defense. See Hargett v. National Westminster Bank, U.S.A., 78 F.3d 836, 840-41 (2d Cir.1996).Conclusion
 
 
 46
 We reject the plaintiff's remaining arguments without discussion. The amended judgment of the District Court is affirmed.
 
 
 
 [1]
 See Michael A. Zubrensky, Note, Despite the Smoke, There Is No Gun: Direct Evidence Requirements in Mixed-Motives Employment Law After Price Waterhouse v. Hopkins, 46 Stan.L.Rev. 959, 976-77 (1994)
 
 
 [2]
 We have also noted that, in some cases, a dual motivation charge would be inappropriate where, on the particular evidence, no reasonable trier could find that two motives could have simultaneously coexisted. Ostrowski gave the example of a case in which an accountant plaintiff established a prima facie case that age discrimination played a role in the defendant's decision to fire him, but in which the defendant also established that the plaintiff had embezzled company funds. "The trier would have to believe one or the other, and a finding of mixed motive simply would not be possible." Ostrowski, 968 F.2d at 185. The evidence would be unlikely to permit a reasonable finding that the employer was determined to discharge only elderly embezzlers. A dual motivation charge should be given only where the available evidence supports a reasonable inference that "permissible and forbidden motives coexisted," and not where the evidence supports only a finding that "there was either unlawful motivation or lawful motivation, but not both." Id
 
 
 [3]
 "Impose" may not be quite the right word, since informing the jury of a route through which the defendant can limit its exposure to certain forms of relief, even after a finding of discriminatory motivation, "is not unfair to a defendant; on the contrary, it accords the defendant the benefit of an affirmative defense." Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 878 (2d Cir.1988). Nonetheless, the fact remains that in such situations, an instruction unwanted by the defendant is submitted to the jury
 
 
 [4]
 As we have noted, a dual motivation charge differs from a substantial motivation charge only in asking the jury to consider an additional question: whether the defendant has established its affirmative defense that it would have taken the same adverse action in the absence of an impermissible reason. The substantial motivation charge asks only the question posed in the first half of the two-part dual motivation charge: whether consideration of an impermissible reason was a motivating factor in the adverse employment action taken by the employer. Requesting a dual motivation--or "mixed-motives," "burden-shifting," or "Price Waterhouse "--charge is just shorthand for seeking an additional instruction concerning the defendant's affirmative defense