**Phyllis HELLER, Plaintiff,**

v.

**KREISLER BORG FLORMAN GENERAL CONSTRUCTION COMPANY, INC., Defendant.**

**No. 91 Civ. 6744(JES).**

United States District Court, S.D. New York.

June 26, 1997.

Herzfeld & Rubin, P.C., New York City, for Plaintiff; Mark D. Rosenzweig, of counsel.

Ross & Cohen, New York City, for Defendant; Michael A. Mulqueen, of counsel.

### MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (1994 & Supp.1997) *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 (1985) *et seq.,* and New York State Executive Law § 290 (1995) *et seq.,* plaintiff Phyllis Heller brings the instant action against defendant Kreisler Borg Florman General Construction Company, Inc. ("KBF"), alleging that KBF terminated her from her position as Corporate Treasurer on the basis of her gender and age. Pursuant to Federal Rule of Civil Procedure 56(c), KBF moves for summary judgment. For the reasons that follow, KBF's motion is denied.

### BACKGROUND

In November 1977, Heller was hired as KBF's "Head Bookkeeper." *See* Defendant's Statement Pursuant to Local Rule 3(g) ("Deft.'s Rule 3(g) Stmt.") ¶ 3. At that time, she was 45 years old and was hired to replace Jack Friedman, a man who had previously been in charge of KBF's accounting department. *Id.* ¶ 4. Heller was interviewed

for the KBF position by the firm's outside accountants, Garlick & Hoffman, because KBF's co-owners Samuel C. Florman and Robert F. Borg did not possess any accounting expertise of their own and Heller would be required to work very closely with Garlick & Hoffman in preparing KBF's audits. *See* Deft.'s Rule 3(g) Stmt. ¶¶ 7–9; Affidavit of Samuel C. Florman Sworn to March 17, 1995 ("Florman Aff.") ¶¶ 10–11. KBF accepted the accountants' recommendation to hire Heller. *See* Deft.'s Rule 3(g) Stmt. ¶ 7.

Heller's duties included supervising payroll, maintaining various financial records, supervising KBF's funds on deposit with area banks, negotiating for better interest rates, contacting owners and subcontractors to collect payments due, assisting with union and insurance company audits, and assisting the outside accountants with the year-end and semi-annual audits. *See* Affidavit of Phyllis Heller Sworn to November 16, 1995 ("Heller Aff.") ¶ 10.

Over the course of Heller's employment, her title changed three times and she received numerous salary increases and bonuses. *See* Deft.'s Rule 3(g) Stmt. ¶ 10; Heller Aff. ¶ 11. In November 1977, Heller was hired as Head Bookkeeper at a starting salary of approximately $20,000 per year. *Id.* In December 1978, her salary increased to approximately $21,600, plus a bonus of $3,000. See Heller Aff. ¶ 11. In December 1979, Heller's salary increased to approximately $23,300, plus a bonus of $6,000. *Id.* The next year, 1980, Heller became Controller for KBF, and then in 1981 she received the title of Corporate Treasurer. *See* Deft.'s Rule 3(g) Stmt. ¶ 10. By December 1983, Heller's salary reached approximately $34,600, plus a bonus of $20,000, and in December 1986, her salary increased to $41,600, plus a bonus of $23,000. *See* Heller Aff. ¶ 12. In December 1988, Heller's salary increased to $49,400, plus a bonus of $25,000. *Id.* In December 1989, KBF informed Heller that she was going to receive a raise which would have increased her salary to $54,600, plus a bonus of $22,000. *Id.*

KBF indicates that Heller's job functions remained essentially the same, while Heller maintains that as the company grew, the demands for information changed in both volume and content. *See* Deft.'s Rule 3(g) Stmt. ¶ 10; Plaintiff's Statement Pursuant to Local Rule 3(g) ("Pltf.'s Rule 3(g) Stmt.") ¶ 10.

Heller testified in her deposition that during her employment, KBF's outside accountants constantly asked her to furnish more information and documentation, but that she couldn't effectively respond to their requests because they never explained precisely what they expected. *See* Deposition of Phyllis Heller dated December 16, 1992 ("Heller Dep.") at 140–42, 149–50, 358, 371, attached as Exh. C to Defendant's Notice of Motion for Summary Judgment; Pltf.'s Rule 3(g) Stmt., Exh. 1. Beginning in the mid 1980's, Florman and Borg observed that KBF's outside accounting costs were rising substantially. *See* Florman Aff. ¶ 14. They addressed their concern to Howard S. Garlick and Fabio R. Berkowicz, the partners at Edward Isaacs & Company [1] who responded that Heller's failure to properly prepare needed schedules caused the increase. *Id.* The accountants also explained that they spent significant time correcting Heller's errors and creating necessary documents, which was being charged primarily to KBF. *See* Berkowicz Aff. ¶ 9.

Borg and Florman asked Garlick and Berkowicz to explain Heller's duties to her. *See* Florman Aff. ¶ 15. Berkowicz made such an effort, but advised Borg and Florman that he did not believe Heller was capable of performing or learning the needed work. *See* Berkowicz Aff. ¶ 13. A few months prior to April 1990, Borg and Florman consulted with their outside accountants to locate a replacement for Heller. *See* Florman Aff. ¶ 17. Florman claimed that the decision to replace Heller was based solely on the advice of Edward Isaacs & Company that Heller "simply was not capable of performing all of the functions that a person in her position should have been capable of performing, and that

---

1. In 1984, Garlick & Hoffman merged with the firm of Edward Isaacs & Company and assumed the latter's name. *See* Affidavit of Fabio R. Ber-kowicz Sworn to March 15, 1995 ("Berkowicz Aff.") ¶ 3.

KBF's outside accounting fees could be substantially reduced by replacing her with a more qualified person." *Id.* ¶ 21.

On April 5, 1990, KBF terminated Heller's employment. *See* Deft.'s Rule 3(g) Stmt. ¶ 11. She was 57 years old. *See* Heller Aff. ¶ 31. KBF advised Heller that she would be given an additional six months salary as severance pay. *See* Deft.'s Rule 3(g) Stmt. ¶ 19. At Heller's request, Florman provided Heller with an employment letter of recommendation.[2] *See* Florman Aff. ¶ 22. Shortly after April 5, 1990, Heller was replaced by David Stein, a 30 year old accountant who had previously been employed by KBF's outside accountants. *See* Deft.'s Rule 3(g) Stmt. ¶ 20.

On November 7, 1990, Heller filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that KBF engaged in discriminatory practices against her, based on her gender and age, by replacing her with a younger male. *See* Defendant's Notice of Motion for Partial Summary Judgment dated July 25, 1994, Exh. A.[3] On or about November 28, 1990, the EEOC forwarded the charge to the New York State Division of Human Rights. *Id.*, Exh. B. By letter dated June 27, 1991, Heller requested a "right to sue letter" from the EEOC, *id.*, Exh. E., which was issued on July, 8, 1991. *Id.*, Exh. F.

On October 7, 1991, Heller filed the instant action alleging that KBF terminated her on the basis of her gender and age, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and New York State Executive Law § 290 *et seq.*

Heller states that after being promoted to Corporate Treasurer, she repeatedly asked to be allowed to attend KBF's regular officers' meetings, but was only allowed to attend after several discussions with Borg and Florman, and only to give a financial report, after which she would be excused. *See* Heller Aff. ¶¶ 16–17. Ultimately, she was permitted to stay for an entire meeting. *Id* ¶ 17. In contrast, Heller states that KBF immediately asked her replacement, David Stein, who was not yet an officer, to attend these same meetings. *Id.* ¶ 18. Heller also claims that when she was in the process of hiring someone to be her assistant, KBF instructed her to look for "younger" people. *See* Heller Dep. at 175–78.

On July 25, 1994, pursuant to Federal Rule of Civil Procedure 56, KBF moved for partial summary judgment dismissing Heller's claims under the New York Human Rights Law. By Order dated November 3, 1994, the Court denied KBF's motion without prejudice.

On March 20, 1995, pursuant to Federal Rule of Civil Procedure 56, KBF moved for summary judgment on all claims on the ground that KBF terminated Heller based on a legitimate, nondiscriminatory reason.

## DISCUSSION

A motion for summary judgment may not be granted unless the court determines that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in a light most favorable to the party opposing the motion. *See*

---

2. Florman wrote, in part:
   In short, she is totally familiar with every aspect of the construction industry, and eminently qualified to head an accounting department for a firm of just about any size.
   Phyllis is a person of total integrity, and her devotion to her work and to the company has been exemplary. She is energetic and hard working and has always been willing to go beyond the call of duty in accomplishing tasks and meeting deadlines.

Both Robert Borg and I have the highest regard for Phyllis as an individual and as a professional....

Plaintiff's Statement Pursuant to Local Rule 3(g) ("Pltf.'s Rule 3(g) Stmt."), Exh. 4.

3. KBF misidentified its exhibits in its Notice of Motion. Accordingly, the Court maintains the designations as identified in Gerard Romski's Affirmation attached to KBF's Notice of Motion.

*United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper. *See Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988).

Title VII and ADEA cases have been analyzed by applying the same well-established burden and order of proof standards that were developed for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). *See O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (assuming, without deciding, that application of Title VII evidentiary framework to the ADEA context is correct); *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 323–24 (2d Cir. 1983); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919–20 (2d Cir.1981); *Geller v. Markham,* 635 F.2d 1027, 1032, 1034–35 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *see also Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997) (in banc) (discussing Title VII standards). Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin, *see* 42 U.S.C. § 2000e *et seq.,* whereas the ADEA prohibits employment discrimination with respect to compensation, terms, conditions, or privileges of employment on the basis of an individual's age for those who are at least forty years old. *See* 29 U.S.C. §§ 623(a)(1), 631(a).

Applying these standards to this case, the Court concludes that KBF's motion for summary judgment must be denied because a jury could find that discrimination was *a*

motivating factor in Heller's termination. *See Fields v. New York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d 116, 121 (2d Cir.1997) ("Since a plaintiff prevails by showing that discrimination was a motivating factor, it can invite the jury to ignore the defendant's proffered legitimate explanation and conclude that discrimination was a motivating factor, whether or not the employer's proffered explanation was also in the employer's mind.").

Although any alleged discriminatory animus by its outside accountants could not be imputed to KBF, there are facts in the record from which the jury could rationally find that a discriminatory motive existed. Florman and Borg were experienced businessmen, yet they did not question the outside accountant's advice to terminate Heller even though KBF had repeatedly promoted Heller and awarded her salary increases and bonuses. Moreover, KBF must have been aware that its outside accountants had every economic incentive to shift the blame to Heller as a justification for their increased costs and a similar incentive to place one of its own people in-house at KBF. Furthermore, Florman provided Heller with a glowing letter of reference *after* he terminated her in which he specifically indicated that Heller is "eminently qualified to head an accounting department for a firm of just about any size" and that "her devotion to her work and to the company has been exemplary." *See* Pltf.'s Rule 3(g) Stmt., Exh. 4.

In addition, Heller indicates that she was the only female executive at KBF who performed more than a clerical role, and that she had historically been treated differently from officers. *See* Pltf.'s Rule 3(g) Stmt. ¶ 22. Specifically, Heller testified at her deposition that her younger male replacement was allowed to attend officer's meetings immediately upon being hired even though he was not an officer, whereas she had to fight through the years to attend those meetings.[4]

---

4. Heller states that before she was hired, Florman held the position of Corporate Treasurer, in addition to his position as Vice President–General Manager. Florman and Borg attended the Officers' meeting with Vice Presidents John Cricco, Peter Cettin, John Nowak and, until he retired, Robert Hewett. When Joseph Zelazny joined KBF as a Vice President, he also immediately attended those meetings.

Heller indicates that as Controller, she was only asked to provide financial information to Cricco or one of the others before the meeting. When she became Treasurer, she thought it important to obtain a fuller understanding of how

*See* Heller Dep. at 197–200. Furthermore, Heller testified during her deposition that Borg once instructed her to look for "younger" people when interviewing applicants for a position as her assistant. *Id.* at 175–178. While none of these facts taken alone would be sufficient, taken in combination and affording Heller the benefit of all favorable inferences, a jury could rationally find that KBF's alleged reliance on its outside accountants may well have masked a discriminatory motive. It follows that summary judgment must be denied.

## CONCLUSION

In sum, based on the evidence now before the Court, a jury could draw a rational inference that age or gender discrimination was a motivating factor in Heller's termination, even if KBF at the same time sought to lower its accounting fees. For the reasons set forth above, KBF's motion for summary judgment is denied.

A Pre–Trial Conference shall be held on July 18, 1997, at 1:00 p.m. in Courtroom 705 at 40 Centre Street.

It is **SO ORDERED.**

KBF worked, and asked to be allowed to attend the meetings. Borg and Florman ultimately allowed her to attend after several discussions. At first, Heller gave a financial report, was thanked and excused from the meeting, but after additional requests, she was allowed to sit in for the entire meeting. By contrast, Heller argues that her replacement, Stein, who was not an officer, was immediately allowed to attend Officers' meetings in full. *See* Heller Aff. ¶ 14–18.