**Nathan FIELDS, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES; Oswald D. Heck Developmental Center; John Mangione; Maureen McNamara; and Trena Fountaine; Defendants.**

**No. 97–CV–1855.**

United States District Court, N.D. New York.

March 31, 2000.

---

Pattison Sampson, Troy, NY, Gerald H. Katzman, of counsel, for plaintiff.

Eliot L. Spitzer, Attorney General of the State of New York, Department of Law, Albany, New York, David B. Roberts, Asst. Attorney General, of counsel, for defendants.

## MEMORANDUM—DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Nathan Fields ("plaintiff" or "Fields") brought this action alleging retaliatory race discrimination in his employment. The complaint, filed on December 18, 1997, alleges causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §§ 1981, 1983, 1985; and the New York State Human Rights Law, N.Y.Exec.Law § 296. Plaintiff seeks compensatory and injunctive relief. On January 7, 1999, by stipulation of the parties, all claims against Miklos Cser were dismissed, and Maureen McNamara ("McNamara") and Trena Fontaine ("Fontaine") were added as defendants. All defendants now move for summary judgment. Plaintiff opposes the motion. Defendants replied to plaintiff's opposition, and plaintiff filed a surreply letter-brief. The motion was returnable on January 28, 2000, before the undersigned upon submission of the papers without oral argument.

## II. FACTS

Fields began his employment with the defendant New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") in January 1985. He took a military leave from 1989 to 1992.

Upon his return from military leave plaintiff assumed the position of Grade 9 Maintenance Assistant (electrical) at Oswald D. Heck Developmental Center, and remained in that position throughout his tenure with OMRDD.

In 1994 plaintiff filed a lawsuit alleging race discrimination in employment against OMRDD and certain individuals. The alleged discriminatory events occurred from 1992 through 1994. In 1995 a jury trial was held. The jury returned a verdict of no cause of action. However, on the special verdict form the jury found that plaintiff had suffered adverse employment actions. Further, the jury determined that plaintiff had proven by a fair preponderance of the evidence that the conduct of John Mangione, a defendant in the prior action as well, deprived the plaintiff of his right to equal protection under the Fourteenth Amendment. The jury further found that any such deprivation was not a proximate cause of injury to plaintiff. Plaintiff's post trial motions were denied, and judgment was entered dismissing the action. On appeal, the Court of Appeals for the Second Circuit found no reversible error in the jury instructions regarding burdens of proof. *See generally Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116 (2d Cir.1997) (hereinafter *"Fields I"*).

Fields now alleges that defendants have retaliated against him since the trial. Specifically, plaintiff alleges that the following actions, which are undisputed, constitute retaliation for his filing the previous lawsuit.

On October 20, 1995, McNamara, Business Officer at OMRDD, observed plaintiff sleeping in the electrical shop during working hours. On another occasion it was alleged that plaintiff's supervisor was unable to locate plaintiff during working hours. Fontaine, an assistant personnel officer, conducted an interrogation in April 1996 regarding these incidents. Such an interrogation is a precursor to OMRDD's formal Disciplinary Action process. No formal Disciplinary Action was ever taken regarding these incidents.

On August 14, 1996, plaintiff was one of approximately 100 employees laid off from their positions at OMRDD as part of a reduction in force. An employee being laid off, such as plaintiff, was permitted to interview for other vacancies in the state without consideration of seniority. Plaintiff interviewed for such a position, but the position was offered to someone else. As a laid off employee, plaintiff was qualified for placement on a preferred list for filling vacancies in other state agencies. Plaintiff's name was not placed on the preferred list until November 1998. However, shortly after being laid off plaintiff relocated to another state and obtained employment there. Despite being called for numerous vacancies, plaintiff declined to be interviewed.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Service*, 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. Retaliatory Discrimination Standard

Under Title VII and the New York Human Rights Law, it is unlawful for an employer to retaliate against an employee because the employee engaged in protected activity. 42 U.S.C. § 2000e–3(a); N.Y.Exec.Law § 296 (McKinney 1993 & 1999–2000 Supp.); *Richardson,* 180 F.3d at 443; *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177 (2d Cir.1996). A plaintiff may also seek redress for intentional discrimination and conspiracy to discriminate through sections 1981, 1983, and 1985 of the United States Code.

A plaintiff must first establish a prima facie case of retaliation by showing "(1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." *Richardson,* 180 F.3d at 443. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to set forth evidence of a legitimate, non-retaliatory explanation for the employment action. *Id.* If the defendant is successful in meeting its burden, then the "plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Id.*

■ Where the defendant sets forth a legitimate reason for the adverse employment action and the plaintiff fails to prove that the legitimate reason was pretextual, the plaintiff may still prevail by proving that the discriminatory motive also played a role in the adverse action. *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 180–82 (2d Cir.1992) (explaining the burden-shifting framework of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). This mixed-motive analysis is appropriate only where there is direct evidence of discriminatory animus, or circumstantial evidence tied directly to discriminatory animus. *Id.* at 182. Moreover, the mixed-motive framework only arises after the plaintiff proves that discriminatory animus was a factor in the employment decision. *Id.* at 181. The employer may then defend its employment decision by proving that the same action would have been taken even absent the discriminatory motive. *Id.*

### C. Prima Facie Case

Defendants contend that plaintiff has failed to set forth evidence of a connection between plaintiff's protected activity and any adverse employment actions taken against him. Plaintiff relies principally upon the jury findings in *Fields I* and the burden shifting analysis of *Price Waterhouse* in opposition to defendants' motion.

■ Fields alleges that defendants retaliated against him for filing his previous law suit. That suit ended in a jury verdict of no cause of action in October 1995. While it is not clear what specific incidents plaintiff avers constitute adverse employment action, other than his termination, there are two possible incidents. At about the same time as the previous action came to trial, the initial steps to discipline plaintiff for sleeping at work and being unlocatable during working hours were instituted. The investigation of these incidents did not occur until April 1996. Moreover, no formal disciplinary action was taken. It is not clear that the sleeping and location

matters constituted adverse employment actions. Even assuming an adverse action, plaintiff has not set forth any evidence of a connection to his prior lawsuit. Accordingly, the sleeping and location matters cannot provide a basis for plaintiff's retaliation claim.

The only other adverse employment action alleged is plaintiff's termination on August 14, 1996. However, plaintiff was terminated more than nine months after the termination of his prior lawsuit. The time between the protected activity and the adverse employment action, therefore, does not create or permit an inference of discriminatory animus. *Cf. Reed*, 95 F.3d at 1178 (finding twelve days between protected activity and adverse employment action sufficient to establish the causal connection element of prima facie case of retaliation).

■ Fields points to McNamara's work papers as direct evidence of retaliation. (Katzman Aff.Ex. M.) Specifically, plaintiff claims that an employee roster used by McNamara during the layoff planning stage, which has plaintiff's and one other employee's names lined out, shows retaliation. However, an employee roster with two names lined out, without more, does not provide evidence of retaliation or discriminatory animus. Plaintiff has not adduced any other evidence, either direct or circumstantial, linking his termination with his prior lawsuit.

■ Plaintiff argues that discriminatory animus by the defendants was found by the jury in *Fields I* and therefore is *res judicata* here. At issue in the prior lawsuit was whether certain adverse employment actions were based upon discrimination. The employment actions at issue were denial of a promotion, disciplinary action, work shift assignment, overtime work assignment, task assignment, pairing of workers by race, and general harassment. 115 F.3d at 118. While the jury ultimately found in favor of defendants, it did find that these were adverse employment actions and that Mangione did violate plaintiff's equal protection rights. Howev-

er, that finding related specifically to the employment actions at issue in the earlier case. It is not those employment actions that are at issue here.

At issue here is whether plaintiff's termination was in retaliation for his prosecution of the previous lawsuit. Any findings made in the prior suit are simply irrelevant here.

Next plaintiff argues that the Price Waterhouse dual motivation framework saves his retaliation claim. However, a prerequisite to the Price Waterhouse analysis is a showing of discriminatory animus. *See Ostrowski*, 968 F.2d at 180 ("the burden-shifting threshold a plaintiff must cross is proof that the forbidden animus was at least one of the 'motivating' factors in the employment decision"). Plaintiff has made no showing of discriminatory animus or connection between his prior lawsuit and his termination.

Plaintiff also argues that the Price Waterhouse mixed motives analysis must be used in all Title VII cases. However, the Second Circuit specifically and unequivocally "reject[ed] Fields's reading of the 1991 Act as requiring a dual motivation charge in every Title VII case." *Fields I*, 115 F.3d at 123.

Fields has not set forth any evidence of a connection between his previous lawsuit, a protected activity, and any adverse employment actions. Therefore, plaintiff has failed to sustain his burden of establishing a prima facie case of retaliation.

## IV. CONCLUSION

Defendants have shown that there is no genuine issue of material fact regarding the lack of a connection between plaintiff's protected activity and any adverse employment action. Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial and accordingly cannot meet his initial burden of establishing a prima facie case. Defendants are entitled to judgment as a matter of law.

Accordingly, it is

ORDERED that defendants' motion for summary judgment is GRANTED and the complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.